OPINION OF THE COURT
Wachtler, J.
The defendant, while living apart from his wife pursuant to a Family Court order, forcibly raped and sodomized her in title presence of their 2% year old son. Under the New York Penal Law a married man ordinarily cannot be prosecuted for raping or sodomizing his wife. The defendant, however, though married at the time of the incident, is treated as an unmarried man under the Penal Law because of the Family Court order. On this appeal, he contends that because of the exemption for married men, the statutes for rape in the first degree (Penal Law, § 130.35) and sodomy in the first degree (Penal Law, § 130.50), violate the equal protection clause of the Federal Constitution (US Const, 14th Arndt). The defendant also contends that the rape statute violates equal protection because only men, and not women, can be prosecuted under it.
I
Defendant Mario Liberta and Denise Liberta were married in 1978. Shortly after the birth of their son, in October of that year, Mario began to beat Denise. In early 1980 Denise brought a proceeding in the Family Court in Erie County seeking protection from the defendant. On April 30,1980 a temporary order of protection was issued to her by the Family Court. Under this order, the defendant was to move out and remain away from the family home, and stay away from Denise. The order provided that the defendant could visit with his son once each weekend.
On the weekend of March 21, 1981, Mario, who was then living in a motel, did not visit his son. On Tuesday, March 24, 1981 he called Denise to ask if he could visit his son on that day. Denise would not allow the defendant to come to her house, but she did agree to allow him to pick up their son and her and take them both back to his motel after being assured that a friend of his would be with them at all times. The defendant and his friend picked up Denise and their son and the four of them drove to defendant’s motel.
When they arrived at the motel the friend left. As soon as only Mario, Denise, and their son were alone in the motel room, Mario attacked Denise, threatened to kill her, and forced her to perform fellatio on him and to engage in sexual intercourse with him. The son was in the room during the entire episode, and the *159 defendant forced Denise to tell their son to watch what the defendant was doing to her.
The defendant allowed Denise and their son to leave shortly after the incident. Denise, after going to her parents’ home, went to a hospital to be treated for scratches on her neck and bruises on her head and back, all inflicted by her husband. She also went to the police station, and on the next day she swore out a felony complaint against the defendant. On July 15, 1981 the defendant was indicted for rape in the first degree and sodomy in the first degree.
II
Section 130.35 of the Penal Law provides in relevant part that “A male is guilty of rape in the first degree when he engages in sexual intercourse with a female * * * by forcible compulsion”. “Female”, for purposes of the rape statute, is defined as “any female person who is not married to the actor” (Penal Law, § 130.00, subd 4). Section 130.50 of the Penal Law provides in relevant part that “a person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person *** by forcible compulsion”. “Deviate sexual intercourse” is defined as “sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva” (Penal Law, § 130.00, subd 2). Thus, due to the “not married” language in the definitions of “female” and “deviate sexual intercourse”, there is a “marital exemption” for both forcible rape and forcible sodomy. The marital exemption itself, however, has certain exceptions. For purposes of the rape and sodomy statutes, a husband and wife are considered to be “not married” if at the time of the sexual assault they “are living apart *** pursuant to a valid and effective: (i) order issued by a court of competent jurisdiction which by its terms or in its effect requires such living apart, or (ii) decree or judgment of separation, or (iii) written agreement of separation” (Penal Law, § 130.00, subd 4).
Defendant moved to dismiss the indictment, asserting that because he and Denise were still married at the time of the incident[1] he came within the “marital exemption” to both rape and sodomy. The People opposed the motion, contending that the temporary order of protection required Mario and Denise to live apart, and they in fact were living apart, and thus were “not *160 married” for purposes of the statutes. The trial court granted the defendant’s motion and dismissed the indictment, concluding that the temporary order of protection did not require Mario and Denise to live apart from each other, but instead required only that he remain away from her, and that therefore the “marital exemption” applied.
On appeal by the People, the Appellate Division reversed the trial court, reinstated the indictment, and remanded the case for trial. The Appellate Division held that a Family Court order of protection is within the scope of “[an] order * * * which by its terms or in its effect requires such living apart” even though it is directed only at a husband, and thus found that Mario and Denise were “not married” for purposes of the statute at the time of the incident.
The defendant was then convicted of rape in the first degree and sodomy in the first degree and the conviction was affirmed by the Appellate Division. Defendant asserts on this appeal that the temporary order of protection is not the type of order which enables a court to treat him and Denise as “not married” and that thus he is within the marital exemption. Defendant next asserts, assuming that because of the Family Court order he is treated just as any unmarried male would be, that he cannot be convicted of either rape in the first degree or sodomy in the first degree because both statutes are unconstitutional. Specifically, he contends that both statutes violate equal protection because they burden some, but not all males (all but those within the “marital exemption”), and that the rape statute also violates equal protection for burdening only men, and not women. The lower courts rejected the defendant’s constitutional arguments, finding that neither statute violated the equal protection clause in the Fourteenth Amendment. Although we affirm the conviction of the defendant, we do not agree with the constitutional analysis of the lower courts and instead conclude that the marital and gender exemptions must be read out of the statutes prohibiting forcible rape and sodomy.
Ill
We first address the defendant’s argument that, despite the order of protection, he was within the “marital exemption” to rape and sodomy and thus could not be prosecuted for eith er crime. Until 1978, the marital exemption applied as long as the marriage still legally existed. In 1978, the Legislature expanded the definition of “not married” to include those cases where the husband and wife were living apart pursuant to either a court *161 order “which by its terms or in its effect requires such living apart” or a decree, judgment, or written agreement of separation (L1978, ch 735; see Penal Law, § 130.00, subd 4). We agree with the Appellate Division that the order of protection in the present case falls squarely within the first of these situations.
The legislative memorandum submitted with the original version of the 1978 amendment, after referring to the situations brought within the scope of “not married”, stated: “In each of the alternatives set forth in this bill, there must be documentary evidence of a settled and mutual intention to dissolve the marital relationship, or a court determination that the spouses should, for the well-being of one or both, live apart” (NY Legis Ann, 1978, pp 403-404). Although the language of the amendment was subsequently changed to the form in which it was enacted, this legislative memorandum was submitted with the final version of the bill. In addition to this clear statement of legislative intent, the plain language of the statute indicates that an order of protection is within the meaning of an order “which by its terms or in its effect requires [the spouses to live] apart”. This language would be virtually meaningless if it did not encompass an order of protection, as the statute separately provides for the other obvious situation where a court order would require spouses to live apart, i.e., where there is a decree or judgment of separation.[2] •
Accordingly, the defendant was properly found to have been statutorily “not married” to Denise at the time of the rape.
IV
The defendant’s constitutional challenges to the rape and sodomy statutes are premised on his being considered “not married” to Denise and are the same challenges as could be made by any unmarried male convicted under these statutes. The defendant’s claim is that both statutes violate equal protection because they are underinclusive classifications which burden him, but not others similarly situated (see Tribe, American Constitutional Law, p 997). A litigant has standing to raise this claim even though he does not contend that under no circumstances could the burden of the statute be imposed upon him (see Michael M. v Sonoma County Superior Ct., 450 US 464, 472, n 8, 473; Orr v Orr, 440 US 268, 272-273). This rule of standing applies as well to a defendant in a criminal prosecution who, *162 while conceding that it is within the power of a State to make criminal the behavior covered by a statute, asserts that the statute he is prosecuted under violates equal protection because it burdens him but not others (see Linda R. S. v Richard D., 410 US 614, 619, n 5; Skinner v Oklahoma, 316 US 535; People v Illardo, 48 NY2d 408, 417; Clancy, Equal Protection Considerations of the Spousal Sexual Assault Exclusion, 16 N Eng L Rev 1, 4-8). Thus, defendant’s constitutional claims are properly before this court.
A. THE MARITAL EXEMPTION
As noted above, under the Penal Law a married man ordinarily cannot be convicted of forcibly raping or sodomizing his wife. This is the so-called marital exemption for rape[3] (see 1881 Penal Code, tit X, ch II, § 278). Although a marital exemption was not explicit in earlier rape statutes (see 1863 Rev Stats, part 4, ch I, tit 2, art 2, § 22), an 1852 treatise stated that a man could not be guilty of raping his wife (Barbour, Criminal Law of State of New York [2d ed], p 69). The assumption, even before the marital exemption was codified, that a man could not be guilty of raping his wife, is traceable to a statement made by the 17th century English jurist Lord Hale, who wrote: “[T]he husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract the wife hath given up herself in this kind unto her husband, which she cannot retract” (1 Hale, History of Pleas of the Crown, p 629). Although Hale cited no authority for his statement it was relied on by State Legislatures which enacted rape statutes with a marital exemption and by courts which established a common-law exemption for husbands.[4]
The first American case to recognize the marital exemption was decided in 1857 by the Supreme Judicial Court of Masseichusetts, which stated in dictum that it would always be a defense to rape to show marriage to the victim (Commonwealth v Fogerty, 74 Mass 489). Decisions to the same effect by other *163 courts followed, usually with no rationale or authority cited other than Hale’s implied consent view.[5] In New York, a 1922 decision noted the marital exemption in the Penal Law and stated that it existed “on account of the matrimonial consent which [the wife] has given, and which she cannot retract” CPeople v Meli, 193 NYS 365, 366 [Sup Ct]).
Presently, over 40 States still retain some form of marital exemption for rape.[6] While the marital exemption is subject to an equal protection challenge, because it classifies unmarried men differently than married men, the equal protection clause does not prohibit a State from making classifications, provided the statute does not arbitrarily burden a particular group of individuals (Reed v Reed, 404 US 71, 75-76). Where a statute draws a distinction based upon marital status, the classification must be reasonable and must be based upon “some ground of difference that rationally explains the different treatment” (Eisenstadt v Baird, 405 US 438,447; People v Onofre, 51 NY2d 476, 491, cert den 451 US 987).
We find that there is no rational basis for distinguishing between marital rape and nonmarital rape. The various rationales which have been asserted in defense of the exemption are either based upon archaic notions about the consent and property rights incident to marriage or are simply unable to withstand even the slightest scrutiny. We therefore declare the *164 marital exemption for rape in the New York statute to be unconstitutional.
Lord Hale’s notion of an irrevocable implied consent by a married woman to sexual intercourse has been cited most frequently in support of the marital exemption (“Equal Protect ion Considerations”, supra, n 6, 16 N Eng L Rev, at p 21). Any argument based on a supposed consent, however, is untenable. Rape is not simply a sexual act to which one party does not consent. Rather, it is a degrading, violent act which violates the bodily integrity of the victim and frequently causes severe, long-lasting physical and psychic harm (see Coker v Georgia, 433 US 584, 597-598; Note, Rape Reform and a Statutory Consent Defense, 74 J of Crim L & Criminology 1518,1519,1527-1528). To ever imply consent to such an act is irrational and absurd. Other than in the context of rape statutes, marriage has never been viewed as giving a husband the right to coerced intercourse on demand (see De Angelis v De Angelis, 54 AD2d 1088; “Abolishing The Marital Exemption”, supra, at n 4, 1983 U of Ill L Rev, at p 207; “Marital Rape Exemption”, supra, at n 5, 52 NYU L Rev, at pp 311-312). Certainly, then, a marriage license should not be viewed as a license for a husband to forcibly rape his wife with impunity. A married woman has the same right to control her own body as does an unmarried woman (“Equal Protection Considerations”, supra, n 6, 16 N Eng L Rev, at pp 19-20; cf. Planned Parenthood v Danforth, 428 US 52). If a husband feels “aggrieved” by his wife’s refusal to engage in sexual intercourse, he should seek relief in the courts governing domestic relations, not in “violent or forceful self-help” (State v Smith, 85 NJ 193, 206).
The other traditional justifications for the marital exemption were the common-law doctrines that a woman was the property of her husband and that the legal existence of the woman v/as “incorporated and consolidated into that of the husband” (1 Blackstone’s Commentaries [1966 ed], p 430; see State v Smith, supra, at pp 204-205; “Marital Rape Exemption”, supra, n 5, 52 NYU L Rev, at pp 309-310). Both these doctrines, of course, have long been rejected in this State. Indeed, “[njowhere in the common-law world — [or] in any modern society — is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated with recognition as a whole human being” (Trammel v United States, 445 US 40, 52).
Because the traditional justifications for the marital exemption no longer have any validity, other arguments have been advanced in its defense. The first of these recent rationales, *165 which is stressed by the People in this case, is that the marital exemption protects against governmental intrusion into marital privacy and promotes reconciliation of the spouses, and thus that elimination of the exemption would be disruptive to marriages. While protecting marital privacy and encouraging reconciliation are legitimate State interests, there is no rational relation between allowing a husband to forcibly rape his wife and these interests. The marital exemption simply does not further marital privacy because this right of privacy protects consensual acts, not violent sexual assaults (see Griswold v Connecticut, 381 US 479, 485-486; “Equal Protection Considerations”, supra, n 6, 16 N Eng L Rev, at p 23). Just as a husband cannot invoke a right of marital privacy to escape liability for beating his wife,[7] he cannot justifiably rape his wife under the guise of a right to privacy.
Similarly, it is not tenable to argue that elimination of the marital exemption would disrupt marriages because it would discourage reconciliation. Clearly, it is the violent act of rape and not the subsequent attempt of the wife to seek protection through the criminal justice system which “disrupts” a marriage (Weishaupt v Commonwealth, 227 Va 389, 315 SE2d 847, at p 855). Moreover, if the marriage has already reached the point where intercourse is accomplished by violent assault it is doubtful that there is anything left to reconcile (see Trammel v United States, 445 US 40, 52, supra; “Marital Rape Exemption”, supra, n 5,52 NYU L Rev, at p 315). This, of course, is particularly true if the wife is willing to bring criminal charges against her husband which could result in a lengthy jail sentence.
Another rationale sometimes advanced in support of the marital exemption is that marital rape would be a difficult crime to prove. A related argument is that allowing such prosecutions could lead to fabricated complaints by “vindictive” wives. The difficulty of proof argument is based on the problem of showing lack of consent. Proving lack of consent, however, is often the most difficult part of any rape prosecution, particularly where the rapist and the victim had a prior relationship (see “Spousal Exemption to Rape”, supra, at n 4, 65 Marq L Rev, at p 125; “Marital Rape Exemption”, supra, n 5, 52 NYU L Rev, at p 314). Similarly, the possibility that married women will fabricate complaints would seem to be no greater than the possibility of unmarried women doing so (“Marital Rape Exemption”, supra, n 5, 52 NYU L Rev, at p 314; “Equal Protection Considerations”, *166 supra, n 6, 16 N Eng L Rev, at p 24).[8] The criminal justice system, with all of its built-in safeguards, is presumed to be capable of handling any false complaints. Indeed, if the possibility of fabricated complaints were a basis for not criminalizing behavior which would otherwise be sanctioned, virtually all crimes other than homicides would go unpunished.
The final argument in defense of the marital exemption is that marital rape is not as serious an offense as other rape and is thus adequately dealt with by the possibility of prosecution under criminal statutes, such as assault statutes, which provide for less severe punishment. The fact that rape statutes exist, however, is a recognition that the harm caused by a forcible rape is different, and more severe, than the harm caused by an ordinary assault (see “Marital Rape Exemption”, supra, n 5, 52 NYU L Rev, at p 316; “Abolishing the Marital Exemption”, supra, n 4, 1983 U of Ill L Rev, at p 208). “Short of homicide, [rape] is the ‘ultimate violation of self’ ” (Coker v Georgia, 433 US 584, 597 [citation omitted], supra). Under the Penal Law, assault is generally a misdemeanor unless either the victim suffers “serious physical injury” or a deadly weapon or dangerous instrument is used (Penal Law, §§ 120.00, 120.05, 120.10). Thus, if the defendant had been living with Denise at the time he forcibly raped and sodomized her he probably could not have been charged with a felony, let alone a felony with punishment equal to that for rape in the first degree.[9]
Moreover, there is no evidence to support the argument that marital rape has less severe consequences than other rape. On the contrary, numerous studies have shown that marital rape is frequently quite violent and generally has more severe, traumatic effects on the victim than other rape (see, generally, Russell, Rape In Marriage, pp 190-199; “Rape Prosecution”, supra, at n 6, *167 7 Vt L Rev, at pp 45-46; “Abolishing the Marital Exemption”, supra, at n 4, 1983 U of 111 L Rev, at p 209).
Among the recent decisions in this country addressing the marital exemption, only one court has concluded that there is a rational basis for it (see People v Brown, 632 P2d 1025 [Col]).[10] We agree with the other courts which have analyzed the exemption, which have been unable to find any present justification for it (see People v De Stefano, 121 Misc 2d 113; Commonwealth v Chretien, 383 Mass 123; State v Smith, 85 NJ 193, supra; Weishaupt v Commonwealth, 227 Va 389, supra; State v Rider, 449 So 2d 903 [Fla App]; State v Smith, 401 So 2d 1126 [Fla App]). Justice Holmes wrote: “It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past” (Holmes, The Path of the Law, 10 Harv L Rev 457, 469). This statement is an apt characterization of the marital exemption; it lacks a rational basis, and therefore violates the equal protection clauses of both the Federal and State Constitutions (US Const, 14th Arndt, § 1; NY Const, art I, § 11).
B. THE EXEMPTION FOR FEMALES
Under the Penal Law only males can be convicted of rape in the first degree. *[11] Insofar as the rape statute applies to acts of “sexual intercourse”, which, as defined in the Penal Law (see Penal. Law, § 130.00) can only occur between a male and a female, it is true that a female cannot physically rape a female and that therefore there is no denial of equal protection when punishing only males for forcibly engaging in sexual intercourse with females.[12] The equal protection issue,, however, stems from the fact that the statute applies to males who forcibly rape females but does not apply to females who forcibly rape males.
Rape statutes historically applied only to conduct by males against females, largely because the purpose behind the pro *168 scriptions was to protect the chastity of women and thus their property value to their fathers or husbands (see State v Smith, 85 NJ, at p 204, supra; 2 Burdick, Law of Crime, pp 218-225; Comment, Rape Laws, Equal Protection, and Privacy Rights, 54 Tulane L Rev 456, 457 [hereafter cited as “Rape Laws”]). New York’s rape statute has always protected only females, and has thus applied only to males (see Penal Law, § 130.35; 1909 Penal Law, § 2010; 1881 Penal Code, tit X, ch II, § 278). Presently New York is one of only 10 jurisdictions that does not have a gender-neutral statute for forcible rape.[13]
A statute which treats males and females differently violates equal protection unless the classification is substantially related to the achievement of an important governmental objective (Caban v Mohammed, 441 US 380, 388; Craig v Boren, 429 US 190,197; People v Whidden, 51 NY2d 457,460, app dsmd 454 US 803). This test applies whether the statute discriminates against males or against females (Caban v Mohammed, 441 US, at p 394, supra; Orr v Orr, 440 US 268, 279, supra; People v Whidden, supra). The People bear the burden of showing both the existence of an important objective and the substantial relationship between the discrimination in the statute and that objective (Wengler v Druggists Mut. Ins. Co., 446 US 142, 151-152; Caban v Mohammed, 441 US, at p 393, supra). This burden is not met in the present case, and therefore the gender exemption also renders the statute unconstitutional.
The first argument advanced by the People in support of the exemption for females is that because only females can become pregnant the State may constitutionally differentiate between forcible rapes of females and forcible rapes of males. This court and the United States Supreme Court have upheld statutes which subject males to criminal liability for engaging in sexual intercourse with underage females without the converse being true (People v Whidden, supra; Michael M. v Sonoma County Superior Ct., 450 US 464, supra). The rationale behind these decisions was that the primary purpose of such “statutory rape” laws is to protect against the harm caused by teenage pregnancies, there being no need to provide the same protection to young males (see Michael M. v Sonoma County Superior Ct., 450 US, a t pp 470-473, supra;People v Whidden, 51 NY2d, at p 461, supra).
*169 There is no evidence, however, that preventing pregnancies is a primary purpose of the statute prohibiting forcible rape, nor does such a purpose seem likely (see “Rape Laws”, op. cit., 54 Tulane L Rev, at p 467). Rather, the very fact that the statute proscribes “forcible compulsion” shows that its overriding purpose is to protect a woman from an unwanted, forcible, and often violent sexual intrusion into her body (cf. Ballard v United States, 430 A2d 483 [DC App]; “Rape Laws”, op. cit., at p 468).[14] Thus, due to the different purposes behind forcible rape laws and “statutory” (consensual) rape laws, the cases upholding the gender discrimination in the latter are not decisive with respect to the former, and the People cannot meet their burden here by simply stating that only females can become pregnant.
The People also claim that the discrimination is justified because a female rape victim “faces the probability of medical, sociological, and psychological problems unique to her gender”. This same argument, when advanced in support of the discrimination in the statutory rape laws, was rejected by this court in People v Whidden (51 NY2d, at p 461, supra), and it is no more convincing in the present case. “[A]n ‘ “archaic and overbroad” generalization’ * * * which is evidently grounded in long-standing stereotypical notions of the differences between the sexes, simply cannot serve as a legitimate rationale for a penal provision that is addressed only to adult males” (id., quoting Craig v Boren, 429 US, at p 198, supra; cf. Orr v Orr, 440 US, at p 283, supra; Tribe, Constitutional Law, p 1066).
Finally, the People suggest that a gender-neutral law for forcible rape is unnecessary, and that therefore the present law is constitutional, because a woman either cannot actually rape a man or such attacks, if possible, are extremely rare. Although the “physiologically impossible” argument has been accepted by several courts (see People v Reilly, 85 Misc 2d 702, 706-707; Brooks v State, 24 Md App 334; Finley v State, 527 SW2d 553 [Tex Crim App]), it is simply wrong. The argument is premised on the notion that a man cannot engage in sexual intercourse unless he is sexually aroused, and if he is aroused then he is consenting to intercourse. “Sexual intercourse” however, “occurs upon any penetration, however slight” (Penal Law, § 130.00); this degree of contact can be achieved without a male being aroused and thus without his consent.
As to the “infrequency” argument, while forcible sexual assaults by females upon males are undoubtedly less common than *170 those by males upon females this numerical disparity cannot by itself make the gender discrimination constitutional. Women may well be responsible for a far lower number of all serious crimes than are men, but such a disparity would not make it permissible for the State to punish only men who commit, for example, robbery (cf. Craig v Boren, 429 US, at pp 200-204, supra).
To meet their burden of showing that a gender-based law is substantially related to an important governmental objective the People must set forth an “ ‘exceedingly persuasive justification’ ” for the classification (Mississippi Univ. for Women v Hogan, 458 US 718, 724;Kirchberg v Feenstra, 450 US 455,461), which requires, among other things, a showing that the gender-based law serves the governmental objective better than would a gender-neutral law (Orr v Orr, 440 US, at pp 281-282, supra; “Rape Laws”, op. cit., 54 Tulane L Rev, at p 468; cf. Michael M. v Sonoma County Superior Ct., 450 US, at p 464, supra). The fact that the act of a female forcibly raping a male may be a difficult or rare occurrence does not mean that the gender exemption satisfies the constitutional test. A gender-neutral law would indisputably better serve, even if only marginally, the objective of deterring and punishing forcible sexual assaults. The only persons “benefitted” by the gender exemption are females who forcibly rape males. As the Supreme Court has stated, “[a] gender-based classification which, as compared to a gender-neutral one, generates additional benefits only for those it has no reason to prefer cannot survive equal protection scrutiny” (Orr v Orr, 440 US, at pp 282-283, supra).
Accordingly, we find that section 130.35 of the Penal Law violates equal protection because it exempts females from criminal liability for forcible rape.
V
Having found that the statutes for rape in the first degree and sodomy in the first degree are unconstitutionally underinclusive, the remaining issue is the appropriate remedy for these equal protection violations. When a statute is constitutionally defective because of underinclusion, a court may either strike the statute, and thus make it applicable to nobody, or extend the coverage of the statute to those formerly excluded (Califano v Westcott, 443 US 76, 89; Welsh v United States, 398 US 333, 361 [Harlan, J., concurring]; Matter of Burrows v Board of Assessors, 64 NY2d 33; Developments in the Law — Equal Protection, 82 Harv L Rev 1065,1136). Accordingly, the unconstitutionality of *171 one part of a criminal statute does not necessarily render the entire statute void (see United States v Jackson, 390 US 570, 585; People v Mancuso, 255 NY 463, 473).
This court’s task is to discern what course the Legislature would have chosen to follow if it had foreseen our conclusions as to underinclusiveness (Matter of Westinghouse Elec. Corp. v Tully, 63 NY2d 191). As Judge Cardozo wrote over 50 years ago, “‘The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether’ ” (People v Mancuso, 255 NY 463, 474, supra; cf. United States v Jackson, 390 US 570, 585, supra [“ ‘(u)nless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law’ ”]). These principles of severance apply as well where elimination of an invalid exemption will impose burdens on those not formerly burdened by the statute (see Orr v Orr, 440 US 268, 271-272, 283-284, supra; Goodell v Goodell, 77 AD2d 684; Childs v Childs, 69 AD2d 406), and where the exemption is part of a criminal statute (see Skinner v Oklahoma, 316 US 535, 543, supra; State v Books, 225 NW2d 322, 325 [Iowa]; cf. Welsh v United States, 398 US, at p 361 [Harlan, J., concurring], supra).
The question then is whether the Legislature would prefer to have statutes which cover forcible rape and sodomy, with no exemption for married men who rape or sodomize their wives and no exception made for females who rape males, or instead to have no statutes proscribing forcible rape and sodomy. In any case where a court must decide whether to sever an exemption or instead declare an entire statute a nullity it must look at the importance of the statute, the significance of the exemption within the over-all statutory scheme, and the effects of striking down the statute (Califano v Westcott, 443 US, at p 90, supra; Welsh v United States, 398 US, at pp 365, 366 [Harlan, J., concurring], supra; Developments in the Law — Equal Protection, 82 Harv L Rev 1065, 1136-1137). Forcible sexual assaults have historically been treated as serious crimes and certainly remain so today (see, generally, Coker v Georgia, 433 US 584, supra; 1 Callaghan’s Criminal Law in New York [Groble, 3d ed], § 19:01). Statutes prohibiting such behavior are of the utmost importance, and to declare such statutes a nullity would have a disastrous effect on the public interest and safety. The inevitable conclusion is that the Legislature would prefer to eliminate *172 the exemptions and thereby preserve the statutes. Accordingly we choose the remedy of striking the marital exemption from sections 130.35 and 130.50 of the Penal Law and the gender exemption from section 130.35 of the Penal Law, so that it is now the law of this State that any person who engages in sexual intercourse or deviate sexual intercourse with any other person by forcible compulsion is guilty of either rape in the first degree or sodomy in the first degree. Because the statutes under which the defendant was convicted are not being struck down, his conviction is affirmed.
Though our decision does not “create a crime”, it does, of course, enlarge the scope of two criminal statutes. We recognize that a court should be reluctant to expand criminal statutes, due to the danger of usurping the role of the Legislature, but in this case overriding policy concerns dictate our following such a course in light of the catastrophic effect that striking down the statutes and thus creating a hiatus would have (cf. Goodell v Goodell, 77 AD2d, at p 685, supra). Courts in other States have in numerous cases applied these same principles in eliminating an unconstitutional exception from a criminal statute and thereby enlarging the scope of the statute.[15] The decision most similar factually to the present one comes from the Alaska Supreme Court in Pías v State (598 P2d 966). That court addressed an equal protection challenge by a female prostitute to a statute which criminalized prostitution, and defined it as a female offering her body for sexual intercourse for hire. The court agreed with the defendant that the statute violated equal protection because it covered only females, but chose to remedy this underinclusion by striking the definition, thereby expanding the statute to cover any person who engaged in prostitution, and affirmed her conviction.[16]
The defendant cannot claim that our decision to retain the rape and sodomy statutes, and thereby affirm his conviction, denies him due process of the law. The due process clause of the
*173 Fourteenth Amendment requires that an accused have had fair warning at the time of his conduct that such conduct was made criminal by the State (see Bouie v City of Columbia, 378 US 347). Defendant did not come within any of the exemptions which we have stricken, and thus his conduct was covered by the statutes as they existed at the time of his attack on Denise.
Neither can it be said that by the affirmance of his conviction the defendant is deprived of a constitutionally protected right to equal protection. The remedy chosen by our opinion is to extend the coverage of the provisions for forcible rape and sodomy to all those to whom these provisions can constitutionally be applied. While this remedy does treat the defendant differently than, for example, a married man who, while living with his wife, raped her prior to this decision, the distinction is rational inasmuch as it is justified by the limitations imposed on our remedy by the notice requirements of the due process clause (US Const, 14th Arndt), and the prohibition against ex post facto laws (US Const, art I, § 10). Thus, for purposes of choosing the proper remedy, the defendant is simply not similarly situated to those persons who were not within the scope of the statutes as they existed prior to our decision.
To reverse the defendant’s conviction would mean that all those persons now awaiting trial for forcible rape or sodomy would be entitled to dismissal of the indictment. Indeed if we were to reverse no person arrested for forcible rape or sodomy prior to the date of this decision could be prosecuted for that offense, and every person already convicted of forcible rape or sodomy who raised the equal protection challenge would be entitled to have the conviction vacated. As the equal protection clause does not require us to reach such a result, we decline to do so.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Meyer and Kaye concur; Judge Simons taking no part.
Order affirmed.

. The defendant and Denise were divorced several months after the assault in the motel room.

. The other prerequisite for finding a husband and wife to be “not married” based on an order of protection is that they were in fact living apart at the time of the incident. This is a question of fact which was resolved against the defendant by the jury and will not he disturbed by this court.

. Although the discussion of the marital exemption will focus on rape, the constitutional analysis is applicable to sodomy as well.

. The influence of Hale’s statement, despite its failure to cite any authority has been discussed by several courts and commentators (see State v Smith, 85 NJ 193, 199; Commonwealth v Chretien, 383 Mass 123, 124, n 1; State v Rider, 449 So 2d 903,904 [Fla App]; Note, Abolishing The Marital Exemption For Rape: A Statutory Proposal, 1983 U of 111 L Rev 201,202 [hereafter cited as “Abolishing the Marital Exemption”]; Note, Spousal Exemption To Rape, 65 Marq L Rev 120,121 [hereafter cited as “Spousal Exemption”]). Interestingly, Hale’s statement has not been fully accepted in England (see Weishaupt v Commonwealth, 227 Va 389, 315 SE2d 847, 850-852).

. See, generally, State v Smith, 85 NJ, at p 200; “Spousal Exemption”, supra, at n 4, at pp 129-130; Note, Marital Rape Exemption, 52 NYU L Rev 306, 309 (hereafter cited as “Marital Rape Exemption”).

. Statutes in nine States provide a complete exemption to rape as long as there is a valid marriage (Alabama, Arkansas, Kansas, Montana, South Dakota, Texas, Vermont, Washington, West Virginia). In 26 other States, statutes provide for a marital exemption but with certain exceptions, most typically where the spouses are living apart pursuant to either a court order or a separation agreement (Alaska, Arizona, Colorado, Idaho, Indiana, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, Nevada, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, Wyoming, Wisconsin). In three other States (Georgia, Mississippi, Nebraska) and the District of Columbia the exemption appears to still exist as a common-law doctrine, and it may still have a limited application in Virginia (see Weishaupt v Commonwealth, 227 Va 389). Finally, in Connecticut, Delaware, Hawaii, and Iowa, there is a marital exemption for some, but not all degrees of forcible rape (see, generally, for statutory references, Schwartz, Spousal Exemption for Criminal Rape Prosecution, 7 Vt L Rev 33,38-41 [hereafter cited as “Rape Prosecution”]; Note, Clancy, Equal Protection Considerations of the Spousal Sexual Assault Exclusion, 16 N Eng L Rev 1, 2-3, n 4 [hereafter cited as “Equal Protection Considerations”]; “Abolishing the Marital Exemption”, supra, at n 4, at pp 203-205).

. A wife may sue her husband for torts he commits against her, including assault and battery (General Obligations Law, § 3-313).

. The stigma and other difficulties associated with a woman reporting a rape and pressing charges probably deter most attempts to fabricate an incident; rape remains a grossly under-reported crime (see Note, Rape Reform and a Statutory Consent Defense, 74 J of Crim L & Criminology 1518,1519, n 7; “Marital Rape Exemption”, supra, n 5, 52 NYU L Rev, at pp 314-315; “Spousal Exemption”, supra, n 4, 65 Marq L Rev, at p 126).

. Rape in the first degree and sodomy in the first degree are “Class B violent felony offenses”, the minimum sentence for which is a jail term of 2-6 years, and the maximum sentence for which is a jail term of 8V3-25 years (Penal Law, § 70.02). The defendant possibly could have been charged with coercion in the first degree, a class D felony (Penal Law, § 135.65), but not all forcible rapes meet all the elements of the coercion statute (see People v Greer, 42 NY2d 170,174-175), and thus if a husband cannot be prosecuted under tide rape statute when he forcibly rapes his wife he may be able to escape prosecution for any felony.

. The Colorado Supreme Court, relying on a 1954 Law Review comment, stated that the marital exemption “may remove a substantial obstacle to the resumption of normal marital relations” and “averts difficult emotional issues and problems of proof inherent in this sensitive area” (632 P2d, at p 1027). We have considered, and rejected, both of these arguments.

. The sodomy statute applies to any “person” and is thus gender neutral. Defendant’s gender-based equal protection challenge is therefore addressed only to the rape statute.

. A female can, however, be convicted under the present statute as an accomplice to a forcible rape of a female (Penal Law, §§ 20.00, 20.05, subd 3; People v Evans, 58 AD2d 919).

. The other nine jurisdictions are Alabama, Delaware, District of Columbia, Georgia, Idaho, Kansas, Mississippi, Oregon, and Virginia. Some of these other States, like New York (see Penal Law, § 130.65), have other statutes which proscribe conduct including the forcible rape of a male by a female and which have less severe punishments than for forcible rape of a female by a male.

. In at least two States there is a specific statute which states that “[t]he essential guilt of rape consists in the outrage to the person and feelings of the female” (Okla Stats Ann, tit 21, § 1113; Idaho Code Ann, § 18-6103).

. See Plas v State, 598 P2d 966 (Alaska); People v Henry, 131 Cal App 82; State v Books, 225 NW2d 322 (Iowa); City of Duluth v Sarette, 283 NW2d 533 (Minn); Tom & Jerry v Nebraska Liq. Control Comm., 183 Neb 410; State v Fowler, 193 NC 290; State v McLeary, 65 NC App 174, affd 311 NC 397; State v Burgun, 49 Ohio App 2d 112; State v Watkins, 259 SC 285, vacated on other grounds 413 US 905; Matter of Tullos, 541 SW2d 167 (Tex Crim App).

. We note also that in the decision previously discussed which found" a rational basis for the marital exemption, People v Brown (632 P2d 1025 [Col]), the court stated that if it did find that the exemption was unconstitutional it would strike just the exemption and leave intact the sexual assault statute; which would then cover all persons (id., at p 1027).