Harry L. Merton was convicted of the first degree rape and sodomy of an eight-year-old child. Sentence was life imprisonment in each case, and a victim compensation fine of $5000. Four issues are raised on appeal.
 I
The defendant argues that Alabama's first degree rape statute, § 13A-6-61, Code of Alabama 1975, and first degree sodomy statute, § 13A-6-63, are unconstitutional and in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution because the statutes criminalize "conduct by unmarried people as a class when the same conduct is not criminal for married people as a class." Appellant's brief, p. 17. See Annot., 24 A.L.R.4th 105 (1983).
In Williams v. State, 494 So.2d 819 (Ala.Cr.App. 1986), this Court found Alabama's statutes defining sodomy unconstitutional:
 "A rule that protects unmarried persons from forcible sodomies but not married persons and excludes married persons from liability from these acts but not unmarried persons cannot withstand constitutional scrutiny. The underinclusive-ness of the forcible sodomy statute is not rationally based. Thus, the 'marital exemption' as it applies to our forcible sodomy statute violates the equal protection clause of the fourteenth amendment of the United States Constitution."
The "marital exemption" is found in the statutory definition of "deviate sexual intercourse" which only involves "persons not married to each other." Alabama Code 1975, § 13A-6-60(2). However, rather than invalidating the statutes in their entirety, this Court extended the benefits of the sodomy statutes to those persons who had been excluded from the scope of the statute:
 "Thus, the 'marital exemption' for the offense of forcible sodomy is hereby severed and removed from this statute. The statute at issue is now enlarged to include married, as well as unmarried, persons. Therefore, any person who engages in deviate sexual intercourse with any other person, by forcible compulsion, is guilty of the offense of sodomy in the first degree.
 "Since the court has chosen to uphold, rather than strike down this statute, the appellant's conviction for sodomy in the first degree is due to be and is hereby affirmed. His conviction is not in violation of due process of law because, at the time the appellant committed this offense, he had notice that his conduct constituted the offense of sodomy in the first degree in this state. Since the appellant was not in the class of persons protected by the 'marital exemption,' which was in effect prior to the date of this opinion, his conduct was proscribed by the forcible sodomy statute in effect at the time he committed this offense."
In Williams, this Court specifically noted: "Our decision today is limited to the forcible sodomy statute since only the constitutionality of this statute is before us. However, our reasoning may well apply to other offenses."
Alabama's rape statutes also contain a "marital exemption." Section 13A-6-61 defines rape in the first degree as follows:
 "(a) A male commits the crime of rape in the first degree if:
 "(1) He engages in sexual intercourse with a female by forcible compulsion; or
 "(2) He engages in sexual intercourse with a female who is incapable of consent by reason of being physically helpless or mentally incapacitated; or
 "(3) He, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old."
The definition of "female" is limited, by § 13A-6-60(4), to the following:
 "Any female person who is not married to the actor.
Persons living together in cohabitation are married for purposes of this article, regardless of the legal status of their relationship otherwise." (Emphasis added.) *Page 1303 
The principal case on which this Court relied, inWilliams v. State, supra, in holding the Alabama sodomy statutes unconstitutional was People v. Liberta, 64 N.Y.2d 152,474 N.E.2d 567, 485 N.Y.S.2d 207 (1984). As we recognized inWilliams v. State, the Liberta court's "discussion focused on the 'marital exemption' for rape." Like the case before us,Liberta dealt with an equal protection challenge to both the first degree sodomy and first degree rape statutes. The New York provisions at issue in Liberta are virtually identical to the corresponding Alabama statutes. Compare N.Y. Penal Law § 130.35 (McKinney 1975) (rape in the first degree) and § 130.00(4) ("female" defined) with Alabama Code 1975, §13A-6-61(a)(1) (rape in the first degree) and § 13A-6-60(4) ("female" defined).
The reasoning in Liberta is sound. We adopt it as our own:
"Where a statute draws a distinction based upon marital status, the classification must be reasonable and must be based upon 'some ground of difference that rationally explains the different treatment.' (Eisenstadt v. Baird, 405 U.S. 438, 447,92 S.Ct. 1029, 1035, 31 L.Ed.2d 349; People v. Onofre,51 N.Y.2d 476, 491, 434 N.Y.S.2d 947, 415 N.E.2d 936, cert. den.,451 U.S. 987, 101 S.Ct. 2323, 68 L.Ed.2d 845).
"We find that there is no rational basis for distinguishing between marital rape and nonmarital rape. The various rationales which have been asserted in defense of the exemption are either based upon archaic notions about the consent and property rights incident to marriage or are simply unable to withstand even the slightest scrutiny. We therefore declare the marital exemption for rape in the New York statute to be unconstitutional.
"Lord Hale's notion of an irrevocable implied consent by a married woman to sexual intercourse has been cited most frequently in support of the marital exemption ('Equal Protection Considerations', supra, n. 6, 16 N.Eng.L.Rev., at p. 21). Any argument based on a supposed consent, however, is untenable. Rape is not simply a sexual act to which one party does not consent. Rather, it is a degrading, violent act which violates the bodily integrity of the victim and frequently causes severe, long-lasting physical and psychic harm (seeCoker v. Georgia, 433 U.S. 584, 597-598, 97 S.Ct. 2861,2868-2869, 53 L.Ed.2d 982; Note, Rape Reform and a Statutory Consent Defense, 74 J. of Crim.L. Criminology 1518, 1519, 1527-1528). To ever imply consent to such an act is irrational and absurd. Other than in the context of rape statutes, marriage has never been viewed as giving a husband the right to coerced intercourse on demand (see De Angelis v. De Angelis,54 A.D.2d 1088, 388 N.Y.S.2d 744; 'Abolishing The Marital Exemption', supra, at n. 4, 1983 U. of Ill.L.Rev., at p. 207; 'Marital Rape Exemption', supra, at n. 5, 52 N.Y.U.L.Rev., at pp. 311-312). Certainly, then, a marriage license should not be viewed as a license for a husband to forcibly rape his wife with impunity. A married woman has the same right to control her own body as does an unmarried woman ('Equal Protection Considerations', supra, n. 6, 16 N.Eng.L.Rev., at pp. 19-20; cf. Planned Parenthood v. Danforth, 428 U.S. 52,96 S.Ct. 2831, 49 L.Ed.2d 788). If a husband feels 'aggrieved' by his wife's refusal to engage in sexual intercourse, he should seek relief in the courts governing domestic relations, not in 'violent or forceful self-help' (State v. Smith, 85 N.J. 193,206, 426 A.2d 38).
"The other traditional justifications for the marital exemption were the commonlaw doctrines that a woman was the property of her husband and that the legal existence of the woman was 'incorporated and consolidated into that of the husband' (1 Blackstone's Commentaries [1966 ed.], p. 430; see State v.Smith, supra, at pp. 204-205, 426 A.2d 38; 'Marital Rape Exemption', supra, n. 5, 52 N.Y.U.L.Rev., at pp. 309-310). Both these doctrines, of course, have long been rejected in this State. Indeed, '[n]owhere in the commonlaw world — [or] in any modern society — is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated *Page 1304 
with recognition as a whole human being' (Trammel v. UnitedStates, 445 U.S. 40, 52, 100 S.Ct. 906, 913, 63 L.Ed.2d 186).
"Because the traditional justifications for the marital exemption no longer have any validity, other arguments have been advanced in its defense. The first of these recent rationales, which is stressed by the People in this case, is that the marital exemption protects against governmental intrusion into marital privacy and promotes reconciliation of the spouses, and thus that elimination of the exemption would be disruptive to marriages. While protecting marital privacy and encouraging reconciliation are legitimate State interests, there is no rational relation between allowing a husband to forcibly rape his wife and these interests. The marital exemption simply does not further marital privacy because this right of privacy protects consensual acts, not violent sexual assaults (see Griswold v. Connecticut, 381 U.S. 479, 485486,85 S.Ct. 1678, 1682-1683, 14 L.Ed.2d 510; 'Equal Protection Considerations', supra, n. 6, 16 N.Eng.L.Rev., at p. 23). Just as a husband cannot invoke a right of marital privacy to escape liability for beating his wife, he cannot justifiably rape his wife under the guise of a right to privacy.
"Similarly, it is not tenable to argue that elimination of the marital exemption would disrupt marriages because it would discourage reconciliation. Clearly, it is the violent act of rape and not the subsequent attempt of the wife to seek protection through the criminal justice system which 'disrupts' a marriage (Weishaupt v. Commonwealth, 227 Va. 389,315 S.E.2d 847, at p. 855). Moreover, if the marriage has already reached the point where intercourse is accomplished by violent assault it is doubtful that there is anything left to reconcile (seeTrammel v. United States, 445 U.S. 40, 52, 100 S.Ct. 906, 913,63 L.Ed.2d 186, supra; 'Marital Rape Exemption', supra, n. 5, 52 N.Y.U.L.Rev., at p. 315). This, of course, is particularly true if the wife is willing to bring criminal charges against her husband which could result in a lengthy jail sentence.
"Another rationale sometimes advanced in support of the marital exemption is that marital rape would be a difficult crime to prove. A related argument is that allowing such prosecutions could lead to fabricated complaints by 'vindictive' wives. The difficulty of proof argument is based on the problem of showing lack of consent. Proving lack of consent, however, is often the most difficult part of any rape prosecution, particularly where the rapist and the victim had a prior relationship (see 'Spousal Exemption to Rape', supra, at n. 4, 65 Marq.L.Rev., at p. 125; 'Marital Rape Exemption', supra, n. 5, 52 N.Y.U.L.Rev., at p. 314). Similarly, the possibility that married women will fabricate complaints would seem to be no greater than the possibility of unmarried women doing so ('Marital Rape Exemption', supra, n. 5, 52 N.Y.U.L.Rev., at p. 314; 'Equal Protection Considerations', supra, n. 6, 16 N.Eng.L.Rev., at p. 24). The criminal justice system, with all of its built-in safeguards, is presumed to be capable of handling any false complaints. Indeed, if the possibility of fabricated complaints were a basis for not criminalizing behavior which would otherwise be sanctioned, virtually all crimes other than homicides would go unpunished.
"The final argument in defense of the marital exemption is that marital rape is not as serious an offense as other rape and is thus adequately dealt with by the possibility of prosecution under criminal statutes, such as assault statutes, which provide for less severe punishment. The fact that rape statutes exist, however, is a recognition that the harm caused by a forcible rape is different, and more severe, than the harm caused by an ordinary assault (see 'Marital Rape Exemption',supra, n. 5, 52 N.Y.U.L. Rev., at p. 316; 'Abolishing the Marital Exemption', supra, n. 4, 1983 U. of Ill.L. Rev., at p. 208). 'Short of homicide, [rape] is the "ultimate violation of self" ' (Coker v. Georgia, 433 U.S. 584, 597, 97 S.Ct. 2861,2869, 53 L.Ed.2d 982 [citation omitted], supra). Under the Penal Law, assault is generally a misdemeanor unless either the victim suffers 'serious physical injury' or a *Page 1305 
deadly weapon or dangerous instrument is used (Penal Law, §§ 120.00, 120.05, 120.10). Thus, if the defendant had been living with Denise at the time he forcibly raped and sodomized her he probably could not have been charged with a felony, let alone a felony with punishment equal to that for rape in the first degree.
"Moreover, there is no evidence to support the argument that marital rape has less severe consequences than other rape. On the contrary, numerous studies have shown that marital rape is frequently quite violent and generally has more severe, traumatic effects on the victim than other rape (see, generally, Russell, Rape In Marriage, pp. 190-199; 'Rape Prosecution', supra, at n. 6, 7 Vt.L.Rev., at pp. 45-46; 'Abolishing the Marital Exemption', supra, at n. 4, 1983 U. of Ill.L.Rev., at p. 209).
"Among the recent decisions in this country addressing the marital exemption, only one court has concluded that there is a rational basis for it (see People v. Brown, 632 P.2d 1025
[Col.]). We agree with the other courts which have analyzed the exemption, which have been unable to find any present justification for it (see People v. De Stefano, 121 Misc.2d 113,467 N.Y.S.2d 506; Commonwealth v. Chretien, 383 Mass. 123,417 N.E.2d 1203; State v. Smith, 85 N.J. 193, 426 A.2d 38,supra; Weishaupt v. Commonwealth, 227 Va. 389, 315 S.E.2d 847,supra; State v. Rider, 449 So.2d 903 [Fla.App.]; State v.Smith, 401 So.2d 1126 [Fla.App.]). Justice Holmes wrote: 'It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past' (Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469). This statement is an apt characterization of the marital exemption; it lacks a rational basis, and therefore violates the equal protection clauses of both the Federal and State Constitutions (U.S. Const., 14th Amdt., § 1; N.Y. Const., art. I, § 11)." Liberta, 474 N.E.2d at 573-75, 485 N.Y.S.2d at 213-15.
The arguments advanced in favor of the marital exemption for rape are as irrational and absurd as those used to justify the marital exemption for forcible sodomy. See Liberta, 474 N.E.2d at 572-575, 485 N.Y.S.2d at 212-215. Relying on Liberta, inWilliams v. State we severed the marital exemption from the statutes defining sodomy. Based on the reasoning of Liberta andWilliams v. State, we now hold that the marital exemption for rape also violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. The marital exemption for the offense of rape found in §13A-6-60(4) is hereby severed from the statutes defining rape, and the proscription of the statutes is now enlarged to include married as well as unmarried persons. Thus, any male who engages in sexual intercourse with any female by forcible compulsion is guilty of rape in the first degree.
 II
The record does not show that the eight-year-old victim was sworn as a witness. She was called to the stand and "qualified" by the district attorney as to whether she knew what it meant to tell a lie and whether she could identify the defendant. After this, the trial judge stated, "I think that you've established that she is qualified as a witness. So, I declare her to be qualified. Now, you can go on with the testimony." The witness testified without the matter of her being sworn ever being mentioned. The record shows that the victim "wascalled and testified as follows." (Emphasis added.) Every other witness who testified at trial "was sworn and testified as follows." (Emphasis added.)
The record shows not only that there was no objection to the failure to swear the witness by defense counsel, but also that he agreed with the district attorney that the witness need not be placed under oath. After the close of the evidence, the following occurred:
 "THE COURT: The only question that I have is that you qualified the victim. *Page 1306 
"MR. SORRELLS [District Attorney]: Qualified her?
 "THE COURT: You qualified her, we never did administer the oath.
 "MR. SORRELLS: You don't have to administer the oath. I cite to you the recent — the idea of qualifying them takes the place of the oath, number one, that is the reason. Also, in recent legislation — child abuse legislation — it says in there every child under sixteen is a competent and qualified witness before the law.
 "MR. TRAWICK [Defense Counsel]: It does away with the oath.
 "MR. SORRELLS: It does away with the fact that you have a witness that you can't qualify.
 "If you can't qualify them they are still competent witnesses.
 "Every case I have had, Your Honor, where the child was under the age of ten or eleven, instead of administering the oath we would qualify them as to their understanding of truth and a lie." (Emphasis added).
After this exchange, the proceeding continued without further reference to this issue. There was no motion for a new trial.
"The sanction of an oath, or affirmation equivalent thereto, is necessary to the reception of any oral testimony. The court may frame such affirmation according to the religious faith of the witness." Alabama Code 1975, § 12-21-136. "If a witness is allowed to give evidence before the jury without first being lawfully sworn, it is the duty of the judge, as soon as it is called to his attention, to immediately administer a proper oath to the witness." Saxton v. State, 389 So.2d 541, 543
(Ala.Cr.App. 1980). In Burkett v. State, 439 So.2d 737, 744
(Ala.Cr.App. 1983), this Court held that a six-year-old's "promise" to tell "the absolute truth" and not to tell "something that is not true" served the purpose of swearing an oath to tell the truth in substance if not in form.
Section 12-21-165(a), Code of Alabama 1975, provides: "Persons who have not the use of reason, such as idiots, lunatics during lunacy and children who do not understand the nature of an oath, are incompetent witnesses." With regard to children, an exception has been made to § 12-21-165(a). Section15-25-3(c), effective October 1, 1985, provides:
 "Notwithstanding any other provision of law or rule of evidence, a child victim of sexual abuse or sexual exploitation, shall be considered a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony. The court may also allow leading questions of such child witnesses in the interest of justice."
Consequently, we find no error in the failure of the trial court to place the child under oath.
Moreover, just as a defendant may waive any impediment to a witness's capacity to testify by failing to object, Conner v.State, 52 Ala. App. 82, 87, 289 So.2d 650 (1973), cert. denied,292 Ala. 716, 289 So.2d 656 (1974), so may he waive the failure to place a witness under oath by the failure to object. Here, not only was there no objection, but defense counsel agreed that recent child abuse legislation "does away with the oath."
 III
The indictments charged that the defendant, "being 16 years or older," did engage in sexual intercourse and deviate sexual intercourse "with a female who is less than 12 years old." The defendant argues that the State failed to prove he was "16 years or older."
After the State rested its case in chief, defense counsel moved to exclude the evidence and "to dismiss for failure to prove." There was no specific objection based on the State's failure to prove the defendant's age.
A document in the record on appeal lists the defendant's date of birth as January 19, 1929. The defendant was fifty-six years old when the crimes were committed. *Page 1307 
The State introduced no evidence of the defendant's age. InPotts v. State, 426 So.2d 886, 894 (Ala.Cr.App. 1982), affirmed,Ex parte Potts, 426 So.2d 896 (Ala. 1983), this Court held: "After careful scrutiny of the pertinent code sections, it appears to us to have been the legislative intent to provide as a defense to the above-referenced crimes [first and second degree rape as defined in § 13A-6-61(a)(3) and §13A-6-62(a)(1)], formally denominated as carnal knowledge, the fact that the appellant is under 16 years of age." The commentary following §§ 13A-6-61 through 62 states: "Under the Criminal Code, it is a defense to both [§ 13A-6-61(a)(3) and §13A-6-62(a)(1)] that the male is under 16 years of age."
The age of the accused is a defense to first degree rape as defined in § 13A-6-61(a)(3) and first degree sodomy under §13A-6-63(a)(3). The accused's age was not an element of the offense which the State had to prove. A contrary rule would work a special injustice in this case where the jury had a chance to see the fifty-six-year-old defendant present in the courtroom.
 IV
On May 3, 1985, the defendant's residence was searched pursuant to a search warrant. Photographs and other personal property were seized and introduced in evidence at trial against the defendant.
On May 3, 1985, a search warrant was issued by the judge of the municipal court of the "city of Enterprise, Coffee, Dale Counties, Alabama." The warrant was addressed to "any lawful officer of the State of Alabama or the City of Enterprise, Coffee, Dale Counties, Alabama."
The affidavit for the warrant alleged a violation of §13A-6-69 and was made by Dothan Police Sergeant Robert L. Sorrells. He executed the warrant accompanied by Enterprise Police Lieutenant Bill Moore.
The municipal limits of Enterprise extend into Dale and Coffee Counties. The searched premises were in Dale County, but within the police jurisdiction of the City of Enterprise, the premises being twenty or thirty feet outside the city limits of Enterprise. The defendant argues that "[i]t is error to admit evidence seized by warrant issued for [a] felony by county attorney, executed without participation by the sheriff or constable and not returned to a state court." Appellant's brief, p. 30.
"Municipal judges are authorized to issue arrest and search warrants for municipal ordinance violations returnable to the municipal court and for violations of state law returnable to any state court." Alabama Code 1975, § 12-14-32.
The warrant was issued by "Warren Rowe, Judge of the Municipal Court of the City of Enterprise, Coffee, Dale Counties, Alabama." Rowe was also an attorney for Coffee County. We have been cited no authority that, for that reason alone, he was not a "detached judicial officer" in issuing the search warrant. There is not even the allegation that Rowe, as county attorney, was in any way involved in the prosecution of the defendant.
The municipal judge had the authority to direct the execution of a search warrant to municipal law enforcement officers.Ex parte Hicks, 437 So.2d 1346 (Ala. 1983). The fact that the search warrant was improperly returned to the municipal judge who issued it, instead of to "any state court," as required by statute, did not invalidate the warrant as the return was merely a ministerial act. Palmer v. State, 426 So.2d 950, 953
(Ala.Cr.App. 1983).
The defendant argues that the searched premises were located between Level Plains in Dale County and Enterprise in both Dale and Coffee Counties and that the police jurisdictions of two cities cannot cover the same area. See City of Homewood v.Wofford Oil Co., 232 Ala. 634, 635, 169 So. 288 (1936); Alabama Code 1975, § 11-40-10. The defendant failed to establish the distance of Level Plains from Enterprise and failed to show that Level Plains had police jurisdiction over the area searched so as to preclude the exercise of jurisdiction by Enterprise. *Page 1308 
Despite the defendant's objections, we find that the search warrant was properly issued and executed.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.