*55 OPINION OF THE COURT
Richard Lee Price, J.
The defendant moved for a mistrial after five jurors were selected, contending that the prosecutor had used his peremptory challenges in such a manner as to attempt to systematically exclude females and blacks from the jury. After hearing arguments and examining the record, the following facts and legal conclusions emerged.
This court begins by observing that when this motion was made at least 2 of the 5 sworn jurors, i.e., 40%, were members of racial minorities. Thus, the jury consisted of one black and one hispanic, each making up 20% of the then sworn members of the jury. (Neither the court nor the attorneys are able to make a determination as to the race of one of the female jurors, a Ms. S.; therefore, for purposes of this motion she will be considered as white.)
It is now settled constitutional law that a prosecutor cannot use peremptory challenges to exclude persons from the petit jury solely because they belong to a particular racial group. (Batson v Kentucky, 476 US 79, 106 S Ct 1712 [1986].) The burden is on the defendant to make a prima facie showing that the prosecutor has purposefully excluded jurors because of their race before the court will consider a motion for a mistrial based on a prosecutor’s alleged misconduct in excluding jurors (Batson v Kentucky, supra, 476 US, at —, 106 S Ct, at 1722-1723; People v Simpson, 121 AD2d 881, 881-882 [1st Dept 1986]). The first determination that must be made is whether or not this defendant has made a prima facie showing of the systematic exclusion of blacks (in this case).
The standards for showing a prima facie case are:
1) that defendant is a member of a cognizable racial group,
2) that peremptory challenges are a practice which allows those who wish to discriminate to discriminate,
3) any other relevant facts which when taken together raise an inference that the prosecutor used peremptory challenges in such a way as to exclude potential jurors based upon their race (Batson v Kentucky, supra; People v Simpson, supra).
There is no question that the first two requirements were met. It is, therefore, up to the court to determine whether the third and final requirement was also met.
One of the relevant circumstances to be considered is the number of minority members seated (People v Harper, 124 *56 AD2d 593 [2d Dept 1986]). Based on the numbers shown, it is clear that the defendant has failed in this burden (People v Harper, supra; see also, People v Hockett, 128 AD2d 393, 394-395 [1st Dept 1987], dissent by Kupferman, J.).
As the Assistant District Attorney pointed out during oral argument, the court notes that of two black venire people excused during this round, one was not challenged by him, but was challenged and excused by the defendant. The other black venire person was originally challenged by the prosecutor. Through inquiry by the court, the prosecutor explained that he had challenged this black male under the mistaken belief that this person had said he was at a church picnic with the defendant’s counsel. When informed by counsel that this was not the case, the prosecutor offered to withdraw his challenge to that individual if defendant’s counsel would consent thereto. Defendant’s counsel refused to do so. It is therefore clear that the prosecutor has not excluded jurors based solely upon race.
Further, had the defendant permitted the seating of those two black venire people, the sworn jury would have consisted of 4 minority members out of 7 or approximately 57% of the jurors. This contrasts not unfavorably with a panel consisting of 65% minorities. The then current composition of the jury (consisting of two minority members) would have made a jury which is 40% minority (20% black, 20% hispanic). This number, while not exactly matching the panel’s racial composition, was not so disproportionate as to imply any systematic exclusion based on race or ethnicity — not at this stage of the proceeding when the majority of the jury has not been seated.
This matter is distinguishable from the holding of the majority in People v Hockett (supra), where a new trial was ordered. In Hockett the matter was originally remanded to the trial court to determine whether or not the defendant had made a prima facie case showing that the prosecutor had used his peremptory challenges to exclude minority members. Upon remand the trial court found that a prima facie case of use by the prosecutor of peremptory challenges to exclude minorities had been demonstrated and the majority of the panel hearing Hockett agreed with that finding. In contrast, I find that this defendant failed to make that showing here.
It should be noted at this point that a panel of 50 to 55 venire people was originally impaneled for this first phase of jury selection. Of that panel, 13 to 18 were excused by me on *57 consent. The final panel from which the potential jurors were drawn consisted of 37 venire people, of whom 24 were members of minority groups, and 13 were whites. Twenty of that final group were male, and 17 female.
The defendant has failed to make a prima facie showing of systematic exclusion of racial minorities and the motion insofar as it is based on alleged exclusion of racial minorities must be denied (People v Simpson, supra).
Defendant has alleged a further basis for this motion seeking a mistrial. He contends that the prosecutor has systematically excluded prospective jurors based on their gender. The prosecutor stated, "The challenge ofM***C***, Mrs. B * * * and m***S*** are challenges based upon gender and not challenges based upon race. What I mean by that is it is my position that men tend to be less sympathetic than women so I am chosing [sic] I would opt more men over women.”
This court is acutely aware that women, as a group, are often not treated in the same way as men are by our courts, both as attorneys and litigants and participants within the judicial system (see, Report of NY Task Force on Women in Cts [Office of Ct Admin 1986], at 60-64, 121-124, 155-158, 178-179, 202-204, 233-234, 248, 260-262; also see, 15 Fordham Urb LJ 11 [1986-1987]). This court considers discrimination based on gender, as well as discrimination based on race, "the basest kind of misbehavior.” (Remarks of former Chief Judge Cooke, Report of NY Task Force, op. cit, appendix A.) Further, this court condemns discrimination based upon gender or race to be equally abhorrent and a violation of the Equal Protection Clause of the Fourteenth Amendment of the US Constitution (see, Reed v Reed, 404 US 71 [1971]) and NY Const, art I, § 11 (see, People v Liberta, 64 NY2d 152 [1984]). Therefore, for the purposes of deciding this motion, the court will assume that the same standards which apply to racial bias also apply to systematic exclusion based on gender. (Although no cases directly on point have been found, one, Manufacturers Hanover Trust Co. v Drysdale Sec. Corp., 801 F2d 13, 28 [1986], speaks in terms of exclusion of identifiable groups; see also, Reed v Reed, supra.) Applying the same analysis as above, I find that the jury as sworn at the time the motion was made had four females, or 80% of the sworn jurors, a finding that is at odds with the prosecutor’s stated intention.
Although the numbers do not exactly match the gender *58 composition of the panel, which was 44% female, there is no showing of any systematic exclusion of females, notwithstanding the avowed intention of the prosecutor, whose actions speak louder than his words.
This branch of the motion based on allegations of systematic exclusion based on gender is denied.
The defendant renewed his motion subsequent to the entire jury being sworn. I have analyzed the last two rounds of jury selection. In the fourth round although the People used their peremptory challenges to excuse a black male and an hispanic male, they left four black females and one hispanic female to be selected as possible jurors. Similarly, on the fifth round of jury selection, although the People excused one black female and one black male, they left two black females and one black male as possible jurors. The motion, whether based on race and/or gender exclusion, must be denied again for failure to prove a prima facie case (see, People v Hockett, supra, dissent of Kupferman J.; People v Harper, supra; People v Simpson, supra).
Of the original jury panel from which the box was filled for the final two rounds of jury selection, 11 panel members — 5 whites, 5 blacks, 1 hispanic, 5 females and 6 males, were excused on consent for various reasons ranging from being crime victims, or close relatives of crime victims to being related to this defendant’s girlfriend. The final jury panel from which potential jurors were selected consisted of 4 whites, 7 blacks and 1 hispanic. That panel also consisted of 10 women and 2 men — 1 black, the other hispanic.
The jury as selected consists of a majority of minority members and females (7 blacks, 1 hispanic and 4 whites; 10 females, 2 males).
It must be noted that the prosecutor failed to use all of his peremptory challenges. Therefore, it is clear that at least some of the minority members of this jury are there by the choice of the prosecutor (People v Harper, 124 AD2d 593, supra).
I find that the defendant has again failed to show a prima facie case, and defendant’s motion is again denied.