OPINION OF THE COURT
Thomas A. Facelle, J.
The instant case presents an interesting and novel issue not heretofore addressed by the courts of this State. Does a paternity proceeding commenced by a putative father abate when he dies after the filing of the petition? The resolution of this question requires a determination of the constitutionality of section 518 of the Family Court Act which deals only with the subsequent death of a mother. For the reasons hereinafter set forth, the court concludes that the present proceeding did not abate upon the death of the petitioner putative father.
the facts
The essential facts are not in dispute and may be readily set forth. On September 14, 1981, a baby girl, Jessica, was born to the respondent, Gina L. Thereafter, on July 20,1982, on his 18th birthday, Joseph A., accompanied by his mother, filed a paternity petition, naming Miss L. as respondent and Jessica as his child. In his verified petition, Mr. A. swears under oath that he had sexual intercourse with Miss L. and as a result thereof she became pregnant with Jessica who was born out of wedlock on September 14, 1981. He swears that he is the father of the child and that he had acknowledged paternity by having furnished support. Prior to the return date on the summons, A. was severely injured in a fire on August 8, 1982. On September 7, 1982, the court received a telephone call from the petitioner’s mother. She informed the clerk that her son would not be able to appear on September 8, 1982, the day set for the preliminary *64 proceedings, since he was hospitalized in the Burn Unit of the Westchester County Medical Center. Accordingly, the matter was adjourned until October 13, 1982.
In a tragic twist of fate, the petitioner died on October 2,1982, as a result of his injuries, some 10 weeks after the filing of the petition. He had been in and out of a coma the entire time and had never left the hospital. Subsequently on October 13, 1982, the respondent, her mother and the deceased petitioner’s parents appeared before this court. In the ensuing colloquy each of these various persons made it painfully apparent that everyone concerned, especially the respondent, wished the proceeding to continue and an order of filiation to enter. Both the petitioner’s parents and the respondent’s mother stated that the petitioner acknowledged to them that he was the father of Jessica and indeed the respondent’s mother told of receiving money from the petitioner for the child’s support. They also stated that it was the petitioner’s last wish that the baby bear his name. The respondent herself stated that petitioner was the father and that she wanted an order of filiation. Because of the unfortunate absence of a necessary party (petitioner) and in light of the novel procedural issue raised, the court adjourned the matter for submission of a certified copy of the death certificate and appointed a Law Guardian to represent the interests of the child.
To further pursue this matter, Maria A., mother of the petitioner, obtained limited letters of administration and was duly appointed administratrix of the estate of her deceased son, by order of the Surrogate’s Court of the County of Westchester on January 12, 1983. Thereafter, the Law Guardian filed a paternity petition on behalf of his ward; naming Gina L. and Maria A. in her representative capacity, as respondents. Virtually, at the same time, Gina L. filed a petition dated April 11,1983, naming Maria A. administratrix of the estate, as a respondent. In that verified petition, she alleges under oath that Joseph A. is the father of her child, Jessica. The parties next appeared before the court on May 10, 1983. At that time, both Gina L. and Maria A. were represented by assigned counsel. After an extensive voir dire, both Gina L. and Maria A. acknowledged paternity and consented to the entry of an order of filiation assuming the court had jurisdiction. A comprehensive memorandum of law was submitted by the Law Guardian and the court then reserved decision on the question of whether it has jurisdiction to determine any of the petitions before it.
THE LAW
As indicated in the above recitation of facts, at the present time there are three paternity petitions pending. The first is the *65 petition filed by Joseph A. prior to his death. The remaining two petitions were filed subsequent to the death of Mr. A. yet these various petitions all have one thing in common, namely, to have Joseph A. adjudicated the father of the child. Each petition would appear to be outside of the scope of section 518 of the Family Court Act. This section, the only one in article 5 of the Family Court Act dealing with the issue of abatement, provides as follows: “If * * * after a petition is filed, the mother dies or becomes mentally ill or cannot be found within the state * * * the proceeding [does not] abate but may be * * * continued by any * * * persons authorized by this article to commence a paternity proceeding” (emphasis added). However, in the case herein, the child’s mother is still alive. Moreover, two of the petitions were filed after the death of one of the parties. Thus, the essential issue, one which goes to the very heart of this court’s jurisdiction, is whether the cause of action for paternity abated upon the untimely death of Mr. A., the original petitioner.
At common law the general rule was that an action abated upon the death of one of the parties. Indeed, it has been held that “[w]here neither common law nor a statute permits the bringing of an action against executors or administrators of a deceased resident, the courts of this State are without jurisdiction to pass upon such a cause of action” (Herzog v Stern, 264 NY 379, 383-384). Thus, it has been through legislation that certain actions no longer abate upon the death of a party (cf. EPTL 11-3.2). Within the context of paternity proceedings a number of courts have held that such a cause of action abates if the putative father dies prior to the filing of the petition (Matter of Corbett v Corbett, 100 Misc 2d 270, affd sub nom. Matter of Mary Ellen C. v Joseph William C., 79 AD2d 1024; Matter of Middlebrooks v Hatcher, 55 Misc 2d 301; but see Matter of Gordon v Cole, 54 Misc 2d 967).
In Matter of Middlebrooks (supra) the court reasoned that since no statute expressly permitted the action to continue, it must abate. The basis for the Appellate Division’s decision in Matter of Mary Ellen C. v Joseph William C. (supra), is less clear. In affirming the decision of the Family Court, the Second Department merely noted that a paternity proceeding is “purely personal to the parties” (79 AD2d 1024, supra) and as such abated when the putative father died prior to the commencement of the proceeding.
Interestingly, neither Matter of Middlebrooks (supra) nor Matter of Mary Ellen C. (supra) refer to section 518 of the Family Court Act. By its express terms, this section precludes abatement of a paternity claim in only one limited situation, i.e., *66 when the mother dies after the filing of the petition. Thus, as a matter of statutory construction, one must conclude that whenever a putative father dies before or after the filing of the petition or whenever a mother dies prior to the filing of a petition, the cause of action abates (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 240). Yet, despite the clear wording of section 518 and the so-called common-law presumption in favor of abatement, a number of courts have allowed paternity proceedings to be commenced after the death of the child’s mother (Matter of Alicia C. v Evaristo G., 114 Misc 2d 764; Matter of La Croix v Deyo, 108 Misc 2d 382; Matter of James J. v Valerie M., 98 Misc 2d 785).
Based upon these decisions, the Legislature has recently amended section 518 of the Family Court Act to make it clear that a cause of action for paternity does not abate even if the mother’s death occurs prior to the filing of the petition (L 1983, ch 310, eff June 21,1983). In a related move, the Legislature has also extended the time within which a paternity proceeding may be commenced (L 1983, ch 305, eff June 21, 1983). Thus, the recent and general trend has been to expand the opportunities for an individual to seek a declaration of paternity.
Despite this trend, the current effect of section 518 is to terminate a proceeding only in the instance where the putative father dies. The Law Guardian, on behalf of his ward, therefore argues that the instant section works an invidious and impermissible discrimination on the basis of sex.[2] Indeed, by permitting survival of a paternity action only where the mother dies, the present statute establishes a classification subject to scrutiny under the equal protection clause (Orr v Orr, 440 US 268; Reed v Reed, 404 US 71). In order to withstand such scrutiny, the challenged classification must be justified by an important governmental objective and must be substantially related to the achievement of that end (Orr v Orr, supra).
The question then becomes, what compelling State interest is furthered by a statutory scheme that extinguishes a paternity cause of action when a putative father dies but permits survival when a mother dies. Candidly, the court can find no justification for the current discriminatory section. Indeed, the holdings in Matter of Mary Ellen C. v Joseph William C. (supra) and Matter of Middlebrooks v Hatcher (supra) rest upon outdated and now disregarded principles of law. The evolution which paternity proceedings have gone through make plain the flaw in section 518.
*67 Historically, paternity proceedings in New York were initially conceived of as criminal in nature (see Rheel v Hicks, 25 NY 289). Subsequently, such proceedings were conducted in both the Children’s Court and the Court of Special Sessions (a criminal court) in New York City. However, in 1962, exclusive original jurisdiction over paternity proceedings was granted to Family Court. It was at this time that such proceedings truly assumed their civil nature.
As originally conceived, paternity proceedings were designed to resolve issues of support (see Matter of L. Pamela P. v Frank S., 59 NY2d 1; Commissioner of Public Welfare v Koehler, 284. NY 260; Matter of Edward K. v Marcy R., 106 Misc 2d 506; Matter of Szajak v Vavonese, 104 Misc 2d 601). It is within this context that the decisions in Matter of Middlebrooks (supra) and Matter of Mary Ellen C. (supra) were fashioned. In both instances the nisi prius courts determined the abatement issue from the viewpoint of whether the child could inherit from the deceased putative father. At the time of these decisions the Estates, Powers and Trusts Law required that an illegitimate child could inherit from his father only if an order of filiation was entered during the lifetime of the father (EPTL 4-1.2, subd [a], par [2], cl [A]). Since the putative father had died prior to the commencement of the proceeding, each court therefore concluded that the child’s inability to inherit caused an abatement of the proceeding.[3]
The essential problem with these holdings is twofold. First, in the aftermath of Lalli v Lalli (439 US 259 [a challenge to the constitutionality of EPTL 4-1.2]), the New York Legislature has greatly expanded the opportunities for an illegitimate child to inherit, even in the absence of an order of filiation entered during the father’s lifetime (see EPTL 4-1.2, subd [a], par [2], els [B], [C]). More importantly, however, the holdings in Matter of Middlebrooks (supra) and Matter of Mary Ellen C. (supra) also pay too much homage to the support aspects of a paternity proceeding. The viability of such a proceeding should not be made to depend upon whether a right of inheritance exists under the EPTL. Indeed, the issue of abatement should never be measured solely in terms of financial considerations. While it is true that the primary purpose of a paternity proceeding is to provide adequate provision for the child’s welfare, this is not its *68 exclusive function. Thus, recent well-reasoned decisions have indicated that an order of filiation may be entered where support is neither requested nor appropriate (Matter of Leromain v Venduro, 95 AD2d 80; Matter of Kordek v Wood, 90 AD2d 209; Joye v Schechter, 112 Misc 2d 172).
Obviously, this court is aware of the personal nature of a paternity proceeding in the sense that the child is not bound by such a determination (Matter of Salvatore S. v Anthony S., 58 AD2d 867; see Commissioner of Public Welfare v Koehler, 284 NY 260, supra). Thus, an order of filiation does not confer legitimacy upon the child but rather it provides the basis upon which certain rights, interests and obligations are fixed (Joye v Schechter, supra, at p 178). Moreover, despite the “non-binding” character of such an order upon the child, it would be ridiculous to suggest that it has no substantive impact on him. By virtue of this order, rights to custody, visitation and orders of protection may be obtained (see Family Ct Act, §§ 549, 551). Indeed, as in the case here, the order of filiation may indirectly confer the status of grandparents upon certain individuals, thereby granting them standing to seek their own order of visitation. (Domestic Relations Law, § 72.) Finally, the proceeding may be motivated by a desire to ensure that the child receive the father’s name (see Matter of Henry v Rodd, 95 Misc 2d 996; Matter of Gordon v Cole, 54 Misc 2d 967, supra; Public Health Law, § 4138, subd 1, par [b]; Family Ct Act, § 543).
Thus, the court concludes that the weight of better reasoned authority recognizes the nonfinancial aspects of a paternity proceeding. Conversely, the court can find no justification for the differing treatment accorded to deceased parents by section 518 of the Family Court Act. Given this improper discrimination the court has two options available. It may satisfy the United States Constitution’s commands either by extending benefits to the previously disfavored class or by denying benefits to both parties (e.g., by striking the statute as a whole) (Orr v Orr, supra). However, sound considerations of logic, reason, as well as statutory construction suggest that the dilemma be resolved by expanding the class of individuals who fall within the statute (Greschler v Greschler, 71 AD2d 322; Childs v Childs, 69 AD2d 406; Matter of Carter v Carter, 58 AD2d 438). Thus, section 518 of the Family Court Act should be read as gender neutral.
Finally, the court pauses to commend the Law Guardian for the extraordinary services performed in connection with this case. Through his diligent and conscientious efforts, the child who is the subject of this proceeding will be its ultimate beneficiary.
*69 Accordingly, the court finds that the present proceeding has not abated by virtue of the untimely death of the petitioner, Joseph A. In view of the fact that the respondent had acknowledged paternity and consented to an order of filiation on October 13, 1982, the order of filiation is effective as of that date. The clerk of the court is hereby directed to prepare an order of filiation consistent herewith-

. Upon filing the instant motion the Law Guardian properly gave notice to the Attorney-General, pursuant to CPLR 1012 (subd [b]).

. Unlike the vague memorandum decision in Matter of Mary Ellen C. (supra), the lower court (sub nom. Matter of Corbett v Corbett, supra) also justified its holding on the absence of any antiabatement statute. This alternate basis, however, does not meet the Law Guardian’s present equal protection argument.