OPINION OF THE COURT
Bruce M. Kaplan, J.
Oscar O. died unexpectedly on February 24, 1985 at a time when there was reason for joy in his life. His girlfriend, *965 Joselyn D., had recently informed him that she was pregnant with his child, and he thrilled at the prospect of being a parent. (The child was subsequently born on May 8, 1985.)
An additional tragedy loomed in the offing because Family Court Act § 518 seemingly required this paternity petition to abate on Mr. O.’s death. However, the court read Family Court Act § 518 in a gender-neutral manner which defeated abatement. Respondent’s sister was appointed as an immediate family member to represent respondent, and a plenary hearing was held. (Cf Matter of James J. v Valerie M., 98 Misc 2d 785 [Fam Ct, NY County 1979].) A finding of paternity was made based on clear and convincing evidence which included petitioner’s testimony respecting the inception, duration and frequency of her exclusive sexual relationship with respondent, his actions, and positive comments made during her pregnancy, and the testimony by respondent’s sister that respondent told her that he was the father of plaintiff’s unborn child.
Since the problem of a father dying prior to a child’s birth arises regularly, and under poignant circumstances,[1] the court deemed it useful to issue this supplemental memorandum for the use of the Bench and Bar in similar situations.
The court also respectfully urges that the Legislature amend Family Court Act § 518 so that its wording will be gender-neutral.
FAMILIAR RULES OF STATUTORY CONSTRUCTION REQUIRE READING FAMILY COURT ACT § 518 AS GENDER NEUTRAL IN ORDER TO PRESERVE ITS CONSTITUTIONALITY
At common law, an action would abate on the death of a defendant. (Matter of Mary Ellen C. v Joseph William C., 79 AD2d 1024 [2d Dept 1981].) This general rule could be modified by statute, and the Legislature amended Family Court Act § 518 (L 1983, ch 310) to provide that the right to bring a paternity proceeding does not abate if a petition is filed before or after the mother dies, becomes mentally ill, or cannot be found within the State. This amendment seemingly weakens *966 the entitlement of petitioner to bring this action. This conclusion would flow from a mechanistic application of the maxim of statutory construction, expressio unius est exclusio alterius (McKinney’s Cons Laws of NY, Book 1, Statutes § 240) which would compel the conclusion that the Legislature intended to preclude the survival of paternity actions after the death of the father. (Matter of Kevin McC. v Mary A., 123 Misc 2d 148 [Fam Ct, Kings County 1984].)
Though the rule of statutory construction contained in section 240 might preclude petitioner from bringing this action, it is inapplicable to this matter, for to employ it would contravene petitioner’s constitutional entitlement to equal protection. Although the rule is conceptually valid, it does not exist in a vacuum. It must defer when counterpointed against constitutional considerations implicating the equal protection clause.
Under these circumstances, recourse to McKinney’s Consolidated Laws of NY, Book 1, Statutes § 150 (c) is more appropriate.
This section provides that a court should make every effort and indulge every presumption in order to construe a statute in favor of its constitutionality.
This approach was utilized in Matter of Carter v Carter (58 AD2d 438 [2d Dept 1977]). In that case, the court was faced with an equal protection attack on Family Court Act §§ 413 and 414 which visited the primary child support obligation on a father, and obligated a mother to pay child support only if the father is dead, incapable of supporting his child or cannot be found within the State. Instead of finding the statutes unconstitutional, it resorted to familiar rules of statutory interpretation. It stated:
"In excising the language in question, or reading it as not creating prior conditions for triggering a mother’s responsibility to contribute to the support of her infant child in accordance with her means, and in giving greater weight to the latter part of section 414 of the Family Court Act, we follow familiar rules of statutory interpretation. Thus subdivision c of section 150 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1, Statutes) declares: 'Where the constitutionality of an act may be rendered doubtful, the court will first ascertain whether a construction of the act is fairly possible by which the question may be avoided. Since every presumption is in favor of the validity of a statute, every effort will be *967 made to give its ambiguous language such a meaning that the act may stand without conflict with the fundamental law. If possible, a statute is required to be construed in favor of its constitutionality, and in such manner as to uphold its constitutionality.’
"In Hirson v United Stores Corp. (263 App Div 646, 650), the court declared: 'Under familiar rules where the constitutionality of an act may be rendered doubtful, the court will first ascertain whether a construction of the act is fairly possible by which the question may be avoided. (Crowell v. Benson, 285 U. S. 22, 62; Panama R. R. Co. v. Johnson, 264 id. 375, 390.)’ ” (58 AD2d, at p 445.)
The court further noted that its construction of the statute, i.e., that the obligation of child support applied equally to fathers and mothers, obviated the need to consider the impact of the equal protection clause of the US Constitution 14th Amendment on statutory classifications based on sex.
This court holds that consistent with subdivision (c) of section 150, Family Court Act § 518 should be read so that the effect of the death, absence or mental illness of the mother should not be viewed as exclusive. The same results should obtain on the occurrence of the death, absence or mental illness of the father.
Nothing contained in the language of Family Court Act § 518 explicitly requires that a proceeding abate on the death of the father. This result obtains as a result of the application of common-law principles. (Matter of Mary Ellen C. v Joseph William C., supra.)
However, a general reading of a subsequent Court of Appeals decision casts doubt on whether abatement is an inexorable result.
In Matter of Burns v Miller Constr. (55 NY2d 501) the Court of Appeals held unconstitutional that portion of Workers’ Compensation Law § 2 (11) which defined children entitled to receive benefits as, inter alia, "an acknowledged child born out of wedlock dependent upon the deceased”.
It noted that it was unconstitutional to require that children born out of wedlock must prove acknowledgement as well as paternity. Indeed, to hold otherwise would be to vitiate the effect of a paternity decision in a contested proceeding where paternity was established by clear and convincing evidence notwithstanding a failure of the respondent to acknowledge.
*968 The court noted that the Workers’ Compensation Board had failed to make findings as to the questions of paternity and dependency. Since the putative father was already dead, the court necessarily determined that with respect to the workers’ compensation proceeding the action had not abated. If it had abated no useful purpose could be served in remitting the proceeding to the Board to make findings on the question of paternity.
The court’s mandate is to ascertain whether a construction of the act is possible under which the question of an act’s constitutionality is avoided. That mandate can be met.
The purpose of the recent amendments to Family Court Act § 518 is to expand the opportunity to maintain paternity proceedings. That purpose is more fully realized by permitting a proceeding to be brought notwithstanding the death, absence or mental illness of either parent before or after the petition is filed. Accordingly, the court will construe the statute in a gender-neutral way. In the alternative the court will consider the effect of the equal protection clause on the gender-based statutory classification.[2]
FAMILY COURT ACT § 518, AS WRITTEN, VIOLATES EQUAL PROTECTION
As presently written, Family Court Act § 518 contains a statutory classification based on sex which renders it subject to scrutiny under the equal protection clause (Caban v Mohammed, 441 US 380; Orr v Orr, 440 US 268; People v Liberta, 64 NY2d 152).
In Mississippi Univ. for Women v Hogan (458 US 718), the Supreme Court invalidated the admissions policy which denied admission to its school of nursing to otherwise qualified males. The court found that such policy violated the equal protection clause.
It noted that statutes based on gender must meet the heightened test of serving important governmental objectives, and that the discriminatory means employed are substantially related to the achievement of the objectives. It stated that the party seeking to uphold a gender-based statute had the burden of showing an exceedingly persuasive justification for the classification.
*969 In People v Liberta (64 NY2d 152, supra) the court held that the marital exemption contained in Penal Law §§ 130.35 and 130.50, first degree rape and first degree sodomy, and the gender exemption contained in Penal Law § 130.35, first degree rape, violated equal protection. It noted that the marital exemption was based on outmoded and discredited doctrines respecting women, and failed to meet even the less restrictive test of having a rational basis. It found with respect to the gender exemption that the People failed to meet their burden of showing an important objective achieved by the law, and the substantial relationship between the discrimination in the statute and that objective. This burden could only be met if a gender-based scheme served the statute’s objectives better than a gender-neutral one, an untenable position.
It specifically stated that Penal Law § 130.35 violated equal protection because it exempts females from criminal liability for forcible rape.
The court decided that the rape and sodomy statutes were underinclusive. It remedied this constitutional infirmity by extending the coverage of the statutes to those heretofore exempted. It excised the marital exemption from the rape and sodomy statutes, and the gender exemption from the rape statute.
Under the same analysis, Family Court Act § 518 is violative of equal protection because it is underinclusive. It must read in a gender-neutral manner in order to save its constitutionality.
We must first examine what important governmental objectives are served by the statute. The answer is readily apparent.
Family Court Act § 518 promotes the important governmental objective to accord equal treatment to marital and non-marital children. This includes the right of nonmarital children to inherit, and obtain such rights and benefits as flow from an order of filiation, or an acknowledgement of paternity.
This objective was reflected in the 1979 amendment to EPTL 4-1.2 in reaction to the decision in Matter of Lalli v Lalli (43 NY2d 65, affd 439 US 259). The amendment permitted a child to inherit notwithstanding the lack of an order of filiation during the father’s lifetime.
The policy to expand the opportunity to obtain orders of filiation is reflected in decisional law invalidating short Stat *970 utes of Limitation in paternity actions (Pickett v Brown, 462 US 1; Mills v Habluetzel, 456 US 91) and legislation amending Family Court Act § 517 to lengthen the Statute of Limitations for paternity proceedings in New York to 21 years after the birth of the child. (Support Enforcement Act of 1985, L 1985, ch 809.)
In addition, the Legislature amended CPLR 302 (b) to permit long-arm jurisdiction in paternity proceedings, and through a series of amendments to Family Court Act § 532 from 1982 through 1984 permitted the results of a variety of sophisticated blood-grouping tests to be used as affirmative evidence of paternity.
There is an ineluctable connection between the ability to maintain a paternity proceeding, and the attainment of those rights and benefits which result from its successful completion.
An order of filiation establishes entitlement to such important benefits as inheritance rights, New York workers’ compensation benefits, Veterans’ benefits, Social Security benefits, Serviceman’s life insurance proceeds, a military allowance and support rights. (Matter of Kordek v Wood, 90 AD2d 209 [4th Dept 1982].)
While the furtherance of procedures to maintain paternity actions is an important governmental objective, Family Court Act § 518 fails to meet that prong of the test which requires that the gender-based classification be substantially related to achieving that objective. (Califano v Webster, 430 US 313.) It fails because there can be no exceedingly persuasive justification that its gender-based scheme serves this objective better than a gender-neutral law (People v Liberta, supra).
Indeed, in considering the same question, the court in Matter of Joseph A. v Gina L. (126 Misc 2d 63 [Fam Ct, Westchester County 1984]) found that Family Court Act § 518 served the important governmental objective of providing a basis upon which certain rights, interests and obligations are fixed, but that its gender-based classification was not substantially related to achieving that purpose. In order to save the statute from being violative of equal protection, it read it in a gender-neutral way so as to include the heretofore underincluded class, i.e., fathers. This court concurs in that result.
*971 FAMILY COURT ACT § 518 MUST BE READ AS GENDER-NEUTRAL TO INCLUDE THE UNDERINCLUDED CLASS IN ORDER TO RENDER IT CONSTITUTIONAL
In the present situation, the underincluded class is that of mothers of children whose putative fathers die, are absent or mentally ill before or after the filing of the petition.
While the death, absence or mental illness of Ms. D. before or after the filing of the petition would not preclude Mr. O. from bringing suit, the death, absence or mental illness of Mr. O. would preclude Ms. D. from bringing this suit under the present construction of the statute.
When faced with a statute violative of the equal protection clause the court is faced with two possibilities. One is to strike the statute down in its entirety. The other is to extend the benefits to the previously disfavored class. (Orr v Orr, supra; People v Liberta, supra.)
In People v Liberta (supra), the court noted that its task was to discern what course the Legislature would have chosen to follow if it had foreseen the court’s conclusion as to underinclusiveness.
In this case the question would be whether the Legislature would opt to have paternity proceedings abate when either party died before or after the filing of the petition, or to enact a statute that would permit a proceeding to continue notwithstanding that either the mother or the father had died before or after the petition was filed.
Given the unremitting expansion of the rights of nonmarital children over the last three decades, and the commitment that the Legislature and the courts have shown to eliminating the distinction between marital and nonmarital children, this court concludes that the Legislature would opt for a gender-neutral statute.
Under a gender-neutral reading of section 518 this action for paternity may be brought notwithstanding the death of the father prior to its bringing, for the action would no longer abate upon his death.

. In another matter which appeared before me, 17-year-old Carmen N. brought a paternity proceeding, but only after the child’s father, 18-year-old Felix C. had been shot to death during her pregnancy. Felix’s mother was named as respondent and she strongly supported the petition being granted. A gender-neutral reading of Family Court Act § 518 prevented the petition from abating and an order of filiation was entered.

. The court is aware that no notice has been given to the Attorney-General of the State of New York pursuant to Executive Law § 71. (Carter v Carter, 58 AD2d 438.)