OPINION OF THE COURT
Bruce M. Kaplan, J.
When William C., an off-duty New York City police officer, *975 was murdered the tribulations of his grief stricken family were far from over.
Their time of mourning and bereavement was shattered by the revelation that Mr. C. was the respondent in a paternity proceeding brought by the Commissioner of Social Services (C.S.S.). Its gravamen was that he was the father of Pamela C. born September 26, 1988. The child’s mother, Deneen C., claimed that she became pregnant when Mr. C. raped her at gunpoint on January 7, 1988.
C.S.S. moved to amend the petition to substitute the administrator of the C. estate for Mr. C.
Counsel for the C. family resisted, and cross-moved to dismiss pursuant to Family Court Act § 519. After reading the papers submitted, which included petitioner’s counsel’s carefully crafted memorandum, the motion to substitute is denied and the cross motion to dismiss is granted.
This matter, one of apparent first impression, is governed by Family Court Act § 519 which was added to the Family Court Act by Laws of 1987 (ch 434).
It is instructive to review the state of the law not only prior to the 1987 amendment but also prior to 1983. The Legislature has amended the Family Court Act twice in order to deal with the recurring problem of under what circumstances the death of a mother, or a putative father should cause a paternity petition to abate.
Section 518 of the Family Court Act, prior to 1983, provided that the death of a mother would not cause a petition to abate if it occurred after the petition was filed. It precluded the bringing of a petition if the mother died prior to the petition being filed and foreclosed the right to commence a paternity proceeding.
When the statute was amended in 1983, with respect to the effect of a mother dying prior to the commencement of a proceeding, it constituted the first modification of an original text derived from section 125 of the Domestic Relations Law enacted in 1925.
The impetus for amending section 518 may well have been a response to such decisions as Matter of Henry v Rodd (95 Misc 2d 996 [Fam Ct, Queens County 1978]) and Matter of James J. v Valerie M. (98 Misc 2d 785 [Fam Ct, NY County 1979]).
It was apparent that Family Court Judges, and Surrogates in their "parens patriae” capacity were searching for a vehicle *976 with which to permit the granting of orders of filiation in paternity proceedings brought subsequent to a mother’s death.
The effect of the 1983 amendment was to allow such suits to be commenced or continued. Among the purposes served would be, (a) the protection of the public purse, (b) establish entitlement for the children to Social Security benefits, New York workers’ compensation benefits, Veterans’ benefits, Servicemen’s Life Insurance Proceeds, military allowance and support rights. (See, Matter of Kordek v Wood, 90 AD2d 209 [4th Dept 1982].)
There were two other factors which contributed to this amendment. The first was a recognition that frequently the families of the deceased mother and the putative father were wholly desirous of obtaining "de jure” recognition of a reality which they had personally treated as fully established. The second was that the utilization of sophisticated white blood cell and red blood cell testing facilitated determinations of whether a man could be excluded as being the father of a child, or establish whether there was a substantial probability of his paternity.
While the 1983 amendment to Family Court Act § 518 dealt with the situation of a mother’s dying prior to the commencement of a proceeding, it was silent with respect to the death of a putative father prior to the commencement of a proceeding, irrespective of whether the putative father was the petitioner or the respondent.
Decisional law attempted to rectify that silence. (See, Matter of Joseph A. v Gina L., 126 Misc 2d 63 [Fam Ct, Westchester County 1984]; Matter of Joselyn D. v Oscar O., 132 Misc 2d 964 [Fam Ct, NY County 1986].)
Both cases noted that a gender-based classification that afforded certain remedies to mothers, but not to fathers, ran afoul of the Equal Protection Clause. That portion of the Fourteenth Amendment mandates that gender-based classifications are subject to intermediate scrutiny to see whether there is an exceedingly persuasive justification for the classification. (Mississippi Univ. for Women v Hogan, 458 US 718; Mills v Habluetzel, 456 US 91.)
It was against that background that the Legislature enacted section 519 of the Family Court Act by Laws of 1987 (ch 434).
This statute clearly states that when a putative father dies anytime before or after a petition is filed, neither the proceeding nor the right to commence it shall necessarily abate if any *977 one of the four specified circumstances are present. These conditions precedent are: (a) the putative father was the petitioner in the paternity proceeding; or (b) the putative father acknowledged paternity of the child in open court; or (c) a blood genetic marker test had been administered to the putative father prior to his death; or (d) the putative father has openly and notoriously acknowledged the child as his own.
Petitioner urges that the statute be given a broad reading to preclude the abatement of this petition. It urges that substitution be permitted even though the putative father was neither the petitioner, nor had he acknowledged paternity in open court, nor had there been administered a blood genetic marker test, nor had the putative father openly and notoriously acknowledged the child.
Under those circumstances the argument that the statute should be given a broad reading so that the petition would not abate is an oxymoron. There simply is no articulable act of the putative father that is alleged to exist that could be subsumed under the conduct requisite to defeat abatement.
The only way to have this petition not be subject to abatement would be to hold the statute unconstitutional. Not only did petitioner not make such a request, but also no notice pursuant to Executive Law § 71, and CPLR 1012 was given to the Attorney-General.
Nonetheless, the court is obliged to construe the constitutionality of Family Court Act § 519.
The validity of this gender-based enactment is subject to intermediate scrutiny as to whether there is an exceedingly persuasive justification for its gender basis. (Clark v Jeter, 486 US 456.) The inquiry is undertaken employing such familiar principles of statutory construction as the strong presumption of constitutionality attaches to legislative enactments,[1] and that a trial court should refrain from declaring statutes unconstitutional.[2]
A determination of the constitutionality of Family Court Act § 518, a statute which is applicable to one gender while remaining conspicuously silent with respect to the other, is far different than when dealing with Family Court Act § 519. The *978 latter statute was subsequently enacted, and is applicable to the other gender but in a more circumscribed manner.
The purpose of Family Court Act § 519 is to overrule the common-law rule that a purely personal action abates when one of the parties dies. It is limited to situations where a putative father is the petitioner or where sufficient evidence is available to make a paternity determination. It also aims to discourage the maintaining of false, and opportunistic claims.[3]
It is not subject to dispute that avoiding false claims is a legitimate objective of State legislation. The question is whether there exists an exceedingly persuasive justification for achieving it through a gender-based statute. (Mississippi Univ. for Women v Hogan, supra; People v Liberta, 64 NY2d 152.)
Paternity proceedings have given rise to a substantial body of jurisprudence, and concommitant remedial legislation. The context has been mainly in two areas. The first has been Statutes of Limitation which mandate shorter time periods for women to bring filiation proceedings than those applicable to those brought by social service officials, and putative fathers. The second has been legislation which made it easier for legitimate offspring to sue for support than illegitimate ones.
In such cases as Pickett v Brown (462 US 1) and Clark v Jeter (supra), the Supreme Court declared such gender-based statutes unconstitutional. It rejected the States’ arguments that the statutes’ gender-based terms bore a substantial relationship to discouraging false claims. What is significant is the court’s explicit recognition that the barring of false claims was a legitimate State objective.
In Clark v Jeter (supra), the court noted that the existence of sophisticated tests for genetic markers diminish the utility of short Statutes of Limitation as a device substantially related to avoiding fraudulent claims. That point is inapposite in regard to this statute for there are considerable questions as to the probative value of such tests when the putative father is deceased.
Irrespective of problems of successfully proving a case, both Family Court Act §§ 518 and 519 permit paternity proceedings to be brought, or continue where the petition is brought either by or on behalf of the decedent. Since Family Court Act *979 § 519’s purpose is to afford protection from having to defend against false claims its provisions are exactly the same as Family Court Act § 518 where the decedent was, or could have been the petitioner.
It has been demonstrated that the statute is gender based in order to accomplish its main purpose.
The first of its provisions operates in a gender-neutral manner. The other three provisions require that some sort of connection be established between the deceased putative father and the child.
No useful purpose would be served by imposing these requirements with respect to a deceased mother. The relationship between the child and the deceased mother is a matter of clear, unequivocal and undisputed fact.
It is biological reality, specifically the mechanics of reproduction, that justifies this gender-based distinction to accomplish the statute’s purpose.
Family Court Act §§ 518 and 519 are concerned with significantly different factual situations. In Family Court Act § 518 the relationship between the decedent and the child is an established fact. In Family Court Act § 519 the relationship between decedent and the child is the ultimate fact to be proven. The Legislature exercised its discretion by drafting a statute that circumvents abatement when some tangible articulable nexus existed between the child and the decedent, i.e., (a) the putative father was the petitioner in the paternity proceeding; or, (b) the putative father acknowledged paternity of the child in open court; or, (c) a blood genetic marker test had been administered to the putative father prior to his death; or, (d) the putative father has openly and notoriously acknowledged the child as his own.
It is obvious that the Legislature was aware of Oscar O. (supra) and Matter of Joseph A. (supra). It also appears from the memorandum of the Office of Court Administration (1987 McKinney’s Session Laws of NY, at 2839) that the Family Court Advisory Rules Committee, a group singularly sensitive to the implications of gender bias, considered the bill’s purposes, and noted its approval. It noted that the bill filled the gap caused by Family Court Act § 518’s silence with respect to the death of a putative father. It may be inferred that this learned group accepted the premise that the bill’s purpose was to foreclose false paternity claims when the putative father died.
*980 The statute’s purpose is to balance foreclosure of frivolous claims which might be brought against deceased putative fathers while allowing legitimate claims to proceed, often with the enthusiastic approval of the families of the mother and putative father, where a concrete connection between decedent and child can be specified.[4] This can only be done, given biological realities, in a gender-based enactment.
The concern with foreclosing false claims is particularly striking in this matter. Petitioner’s assignor claims that she became pregnant when Mr. C. raped her at gunpoint on January 7, 1988.
There is a representation that this incident was the subject of a complaint to the New York City Police Department. It is significant that there is no indication of when the report was made or what, if any, investigatory findings were made. Nor should Mr. C.’s death, almost two years after the rape allegedly occurred, have hindered any preliminary inquiry. As a police officer Mr. C. would be particularly constrained to participate in any such investigation.
The lack of knowledge about this subject is notably prejudicial to Mr. C.’s family because he is unavailable to answer these extraordinarily heinous charges. If the matter did not abate, the C. family would face insurmountable problems in preparing a defense since the claim implicates a highly unusual scenario for which apparently no independent corroboration exists. Nevertheless absent Mr. C.’s input his family would be placed at an insuperable disadvantage.

. McKinney’s Cons Laws of NY, Book 1, Statutes § 150; Stepping Stones Assocs. v City of White Plains, 100 AD2d 619, affd 64 NY2d 690, cert denied 471 US 1066.

. McKinney’s Cons Laws of NY, Book 1, Statutes § 150; People v Guilbert, 122 Misc 2d 694 (Crim Ct, Queens County 1983).

. Mem of Senator Goodhue in support of Bill S 3526, 1987 NY Legis Ann, at 156.

. While scientific advances make theoretically possible probative BGT and DNA testing when the mother is deceased (Matter of Michael S., 146 Misc 2d 930 [Fam Ct, NY County]), it is not necessarily instructive with respect to deceased putative fathers. Moreover it presumes the cooperation of the decedent’s family, something that may not be forthcoming. Under Family Court Act § 532 (a) only the "mother, her child and the alleged father” can be ordered to submit to blood tests. That limitation appears in a statute that also uses the word "parties” militating against the argument that the terms are used interchangeably.