OPINION OF THE COURT
Bruce M. Kaplan, J.
One of the sad realities of the times in which we live is the inexorable increase of cases on Family Court dockets involving persons who have been found to have neglected their children, and who themselves are afflicted with "life threatening” illnesses.
A necessary concomitant of this fact is that, all too swiftly, *633 life-threatening illnesses ineluctably become life-ending ones. Such was the fate of G. B. who died on December 31, 1991 although valid proof of her demise was only recently obtained.
Ms. B. was found to have neglected S. because of her failure to provide adequate supervision, and S. was placed with the Commissioner of Social Services (CSS) for up to one year on February 20, 1991. Now that Ms. B. has passed away, S. is in even greater need of an ongoing source of care.
S.’s situation, though far from rare, is one that grows increasingly prevalent. It would seem evident that the Family Court should exercise its parens patriae jurisdiction to provide not only for her in this proceeding, but for the large number of neglected children whose parent or parents die after findings of neglect have been made.
S.’s circumstances are hardly unique, and one can conjecture that placement is extended invariably in situations of this nature since it is a desirable end, and undertaken with the certainty that no one is in a position to appeal. Unfortunately it is done without consideration of the issue of abatement. This decision addresses that issue.
It does so because before this court can extend placement, it must first determine that it is not foreclosed from doing so by operation of the doctrine of abatement in an instance where the only known parent or parents of a neglected child are deceased.
Our inquiry commences with an examination of the doctrine of abatement. We next counterpoint it against the conceptual matrix of a dispositional hearing in a child protective proceeding, and ascertain if the petitioner abates.
ABATEMENT
There are a number of ways that abatement is defined in Black’s Law Dictionary 16 (4th ed). For example: "abatement and revival: used in reference to actions at law, word abate means that action is utterly dead and cannot be revived except by commencing a new action. First Nat. Bank v. Board of Sup’rs of Harrison County, 221 Iowa 348, 264 N.W. 281, 106 A.L.R. 566.”
Another definition is the "[d]estruction of cause of action. In re Thompson, Mo., 159 S.W. 2d 626, 628.” (Black’s Law Dictionary, op. cit.)
For our purposes New York’s Civil Practice Law and Rules *634 touches on abatement most cogently in CPLR 1015 (a) which provides: "Generally. If a party dies and the claim for or against him is not thereby extinguishable the court shall order substitution of the proper parties.”
The scope of abatement has been limited by statutory enactment from the common-law doctrine that all actions abated upon death of any sole party.[1] (Matter of Corbett v Corbett, 100 Misc 2d 270 [Fam Ct, Queens County 1979].) Especially onerous was the fact that personal injury actions abated until the passage of remedial legislation which added sections 118 and 119 to the Decedent Estate Law. (L 1935, ch 795 [General Construction Law § 37-a defines "personal injury” in a singularly expansive manner].)
Abatement, notwithstanding remedial legislation, still occurs on the death of a party in a number of clearly identified instances. The determinative factor is whether what is involved is personal in nature, or involves the personal status of a party. The following examples illustrate this point.
In an action for permission to discontinue the life support system of a person in a comatose state, and the person died of natural causes pending appeal, it was stated where only personal status of a party is involved, and death occurs, one deems the matter abated. (Matter of Eichner [Fox], 73 AD2d 431 [2d Dept 1980].)
For that reason a criminal case is abated upon the death of the defendant even if it occurs following conviction while an appeal is pending. (People v Mintz, 20 NY2d 753.)
An action under Civil Rights Law §§ 50 and 51 for use of an infant’s picture without parental permission abated on the infant’s death. A cause of action under those statutes, based upon the invasion of the infant’s privacy, belonged to the infant alone and was extinguished upon the infant’s death. (Smith v Long Is. Jewish-Hillside Med. Ctr., 118 AD2d 553 [2d Dept 1986].)
Until recently paternity proceedings abated on the death of either party. As was noted in Matter of Corbett v Corbett (supra), in the absence of statutory authority a paternity proceeding abated on the death of a mother.
Subsequently remedial legislation contained in Laws of 1983 *635 (ch 310) added Family Court Act § 518 to permit a paternity proceeding to be commenced, or continued after the death of the mother by any of the persons authorized to bring a paternity proceeding under Family Court Act article 5.
Family Court Act § 518 was silent with respect to abatement because of the death of a putative father. This statute was thereafter construed in a gender-neutral manner to foreclosure abatement, and preserve it from a successful constitutional challenge. (Matter of Joselyn D. v Oscar O., 132 Misc 2d 964 [Fam Ct, NY County 1986].)
Thereafter Family Court Act § 519 was enacted to provide that under certain broad circumstances a paternity proceeding would not abate upon the death of a putative father. (L 1987, ch 434.)
A child protective proceeding would abate should the respondent die before completion of the fact finding. Its purpose is to determine whether a respondent has abused or neglected a child or children. (Family Ct Act § 1044.) As such it involves the personal status of the respondent.
A neglect petition would also abate on the death of the child since there no longer remained anyone to be protected. (Matter of Lambert, 119 Misc 2d 326 [Fam Ct, Suffolk County 1983].)
Abatement still occurs upon death in matrimonial actions. (Matter of Crandall, 196 NY 127.) However the death of a (former) spouse subsequent to the expiration of the three-month interlocutory period following the initial judgment (during which the decree was neither final nor effective) did not cause abatement. (Cornell v Cornell, 7 NY2d 164.) This case held that since entry of a final judgment was merely a ministerial act, it was properly entered nunc pro tune several years later.
The matrimonial suit remains the major category where abatement occurs upon death because the action is entirely personal in nature. (Siegel, NY Prac § 185 [2d ed].)[2]
THE DISPOSITIONAL HEARING IN A CHILD PROTECTIVE PROCEEDING
We now examine the nature and purpose of a dispositional hearing in a child protective proceeding.
*636 Family Court Act § 1045 defines a dispositional hearing as follows: "When used in this article, 'dispositional hearing’ means a hearing to determine what order of disposition should be made.”
Unfortunately, this definition is far less focused in its language than that found in Family Court Act § 623, which provides: "When used in this part, 'dispositional hearing’ means a hearing to determine what order or disposition should be made in accordance with the best interests of the child.”
These definitions vary wildly even though they have identical objectives.
Nonetheless, decisional law clearly, and statutory law inferentially require that the disposition should be made in accordance with the best interests of the child.
Although Family Court Act § 1055 is inartfully drafted, its unmistakable mandate is that the extension of placement must be consistent with the best interests of the child (Matter of Antonelli v Department of Social Servs., 155 AD2d 598 [2d Dept 1989]; Matter of Belinda B., 114 AD2d 70 [4th Dept 1986]), and that it focus on the best interest of a child.
Although "best interests” is the operative standard, what constitutes "best interests” can vary from case to case. It could be an extension of placement (Matter of Tommy A., 201 AD2d 970 [4th Dept 1994]); or a return to the parent (Matter of Sunshine A. Y., 88 AD2d 662 [2d Dept 1982]).
It is clear that a hearing of this nature does not determine the personal status of a respondent, nor is it personal in nature to him or her. Accordingly it does not abate on his or her death.
The validity of this conclusion is underscored by the amendment of Domestic Relations Law § 113 by Laws of 1993 (ch 108).
It provides in pertinent part: "An authorized agency may also consent to the adoption of a minor whose care and custody has been transferred to such agency pursuant to section ten hundred fifty-five of the family court act or section three hundred eighty-four-a of the social services law, where such child’s parents are both deceased.” In order for that provision to be given effect a child protective proceeding in which a child is placed in foster care, or an extension thereof, could not abate on the death of a parent or parents. If it did the child would no longer be under the care of the Commis *637 sioner of Social Services. (See, Matter of Ingrid R., 209 AD2d 177 [1st Dept 1994].)
Accordingly placement is extended to February 15, 1996.
FAMILY COURT ACT §§ 1045 AND 1055 SHOULD BE AMENDED
It is recommended that Family Court Act § 1045 be amended as follows: A "dispositional hearing” means a hearing to determine what disposition should be made in accordance with the best interests of the child.
As redrafted it would contain the same definition presently set forth in Family Court Act § 623.
Family Court Act § 1055 (b) was amended to add a new paragraph (iv) by Laws of 1992 (ch 538). The purpose of the amendment was to ensure a more meaningful review of placement following a finding of abuse or neglect.
Unfortunately the verbiage used obfuscates the purpose of the hearing rather than sharpening its focus.
Family Court Act § 1055 (b) (iv) presently provides:
"(A) At such hearing the court shall determine:
"1. whether the conditions and circumstances giving rise to the order of placement, or extension thereof, have changed since the issuance or such order or last extension thereof; and
"2. whether the child services plan prepared in accordance with section four hundred nine-e of the social services law requires review, adjustment or modification and, if so, the court may adjust or modify such plan and may issue appropriate orders pursuant to section one thousand fifteen-a of this chapter; and
"3. the extent to which such plan has been complied with by the respondent and the supervising agency during the term of the order of placement or extension thereof.
"(B) in determining whether an extension of placement is consistent with the best interests of the child, the court shall consider:
"1. whether an extension is consistent with the permanency goal established for the child in the child services plan as approved, adjusted or modified by the court; and
"2. whether a child would be at risk of abuse or neglect if returned to the parent or other person legally responsible for the child’s care: and
*638 "3. any other factors which the court deems appropriate.
"The court shall state its findings thereon in writing. A copy of the court’s decision and the child services plan shall be given to the respondent.”
It is recommended that it be redrafted to read as follows:
(A) An extension of placement shall be made only if it’s consistent with the best interests of the child. In making this determination the court shall consider:
(1) whether an extension is consistent with the permanency goal established for the child in the child services plan as approved, adjusted or modified by the court; and
(2) whether the child would be at risk of abuse or neglect if returned to the parent or other person legally responsible for the child’s care; and
(3) any other factors which the court deems appropriate.
(B) At such hearing the court shall determine:
(1) whether the conditions and circumstances giving rise to the order of placement, or extension thereof, have changed since the issuance or such order or last extension thereof; and
(2) whether the child services plan prepared in accordance with section four hundred nine-e of the social services law requires review, adjustment of modification and if so, the court may adjust or modify such plan and may issue appropriate orders pursuant to section one thousand fifteen-a of this chapter; and
(3) the extent to which such plan has been complied with by the respondent and the supervising agency during the term of the order of placement or extension thereof; and
(4) the court shall state its findings thereon in writing. A copy of the court’s decision and the child services plan shall be given to the respondent.

. This doctrine has not been all inclusive for a considerable period of time. For centuries contract actions did not abate on the death of either party. (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1015:l, at 183.)

. As a matter of historical interest the interlocutory period has been abolished and a divorce becomes final when decided on the merits. (L 1968, ch 645.)