OPINION OF THE COURT
Kevin C. Fogarty, J.
On February 8, 1984, petitioner instituted this paternity proceeding to establish that the respondent, Jay O., deceased as of June 9, 1983, is the father of Patrick Ryan S., born out of wedlock to petitioner on January 4, 1984. The petitioner has stated to the court that she and the respondent had planned to be married, that she became pregnant and in the interim period, respondent was killed in an automobile accident. Petitioner has informed the court of facts which indicate the possibility of a workers’ compensation claim.
The issue before the court is whether the Family Court has jurisdiction to entertain a paternity proceeding against a puta *323 tive father who died prior to the commencement of the proceeding. Although this is not a case of first impression, it is necessary to reexamine and resolve the issue in light of recent judicial decisions, legislative amendments and the development and use of the human leucocyte antigen blood tissue test (HLA), in establishing paternity.
The purpose of paternity proceedings has traditionally been “to insure support for the child born out of wedlock and to provide a procedure for the government to obtain indemnification for the expense of supporting the child”. (Matter of Kordek v Wood, 90 AD2d 209, 210; see, also, Matter of Leromain v Venduro, 95 AD2d 80.) While an order of filiation does not confer the status of legitimacy, it serves as a foundation upon which certain rights, interests and obligations of all parties may be based. (Supra; Joye v Schechter, 112 Misc 2d 172,178.) An order of filiation determines rights of inheritance (EPTL 4-1.2, subd [a], par [2]); the right to recover benefits under the New York Workers’ Compensation Law (§ 2, subd 11), the Veterans’ Benefits Act (US Code, tit 38, § 101, subd [4], par [A]), and the Social Security Act (US Code, tit 42, § 416, subd [h], par [3], cl [A]); the right to recover serviceman’s life insurance proceeds (US Code, tit 38, § 765, subd [9]) and a military allowance (US Code, tit 37, § 401, subd [2]); the right to notice in adoption proceedings (Domestic Relations Law, § 111-a, subd 2, par [a]); and under the Family Court Act, the right to support by parents (Family Ct Act, § 545), custody or visitation (Family Ct Act, § 549), and an order of protection (Family Ct Act, § 551). (Supra.)
The Legislature has designated the Family Court as the forum primarily responsible for the protection of out-of-wedlock children. (Matter of Kordek v Wood, supra.) While petitioner is clearly authorized to seek the remedy of a declaratory judgment in the Supreme Court, such a remedy would be inappropriate. A declaratory judgment imparts the status of legitimacy, while an order of filiation declares paternity or fatherhood. The function of the declaratory judgment has been to “ ‘determine justiciable controversies between parties which either are not yet ripe for adjudication by conventional forms of remedy or which for other reasons are not * * * amenable to the usual remedies’ ”. (Matter of John J. S. v Theresa L., 99 Misc 2d 578, 580, citing Krieger v Krieger, 25 NY2d 364, 366.) Since the Legislature has vested exclusive original jurisdiction over paternity proceedings in the Family Court, an order of filiation is the more appropriate remedy for controversies concerning the determination of fatherhood. (Matter of John J.S. v Theresa L., supra.)
*324 In response to several judicial decisions (Matter of James J. v Valerie M., 98 Misc 2d 785; Matter of La Croix v Deyo, 108 Misc 2d 382; Matter of Alicia C. v Evaristo G., 114 Misc 2d 764), the Legislature recently amended section 518 of the Family Court Act (L 1983, ch 310) to make it clear that the right to bring a paternity proceeding exists after the death, mental illness or absence of the mother. If the maxim expressio urtius est exclusio alterius (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240) is applied in construing the statute, it could be said that the Legislature intended to exclude the survival of paternity actions after the death of the father. Such a construction would be appropriate if an order of filiation established only a child’s right to support by the father which necessarily ceases upon his death. However, the Legislature has seen fit to expand the rights, obligations and benefits received by an order of filiation. Where there is a right there must be a remedy. Therefore, where the Legislature provides certain rights to out-of-wedlock children which survive the death of the putative father and which attach by establishing paternity, there must be a forum to obtain the remedy. The proper forum, as indicated by the Legislature, is the Family Court. It should also be noted that despite the fact that the right to bring such actions beyond the death of the putative father is not specifically prescribed, neither is it proscribed.
Case law on the question of whether a cause of action for paternity abates upon the death of the putative father is conflicting and unclear. In Matter of Corbett v Corbett (100 Misc 2d 270, affd sub nom. Matter of Mary Ellen C. v Joseph William C., 79 AD2d 1024), the Appellate Division affirmed a Family Court order dismissing a paternity petition and held that where the putative father died prior to the commencement of the proceeding for an order of filiation, the cause of action abated prior to the institution of the proceeding. The Family Court decision placed heavy reliance on the legislative intent expressed in EPTL 4-1.2 (subd [a], par [2], cl [A]) which requires an illegitimate child to obtain an order of filiation during the lifetime of the putative father in order to inherit from him. The court specifically held that absent statutory authority to abrogate the common-law rule of abatement upon the death of the putative father, the paternity petition must be dismissed. The Appellate Division affirmed the Family Court order and reasoned that a paternity proceeding is a proceeding instituted to determine a relationship or status between individuals and, as such, it is purely personal to the parties and would abate upon the death of the putative father.
*325 Similarly, in Matter of Middlebrooks v Hatcher (55 Misc 2d 301), the court relied upon section 513 of the Family Court Act and EPTL 4-1.2 and found an intent on the part of the Legislature to avoid postdeath litigation in this area. The court emphasized that EPTL 4.1-2 (subd pa], par [2], cl [A]) provided for orders of filiation “during the lifetime of the father”, and section 513 of the Family Court Act provided that “[i]f a parent dies, an order of support or judicially approved settlement made prior to that parent’s death shall be enforceable as a claim against the deceased parent’s estate in an amount to be determined by the surrogate’s court” (emphasis added).
EPTL 4-1.2 has of course been amended by the Laws of 1981 (L 1981, ohs 67, 75) to remove the restrictive rights of inheritance of the out-of-wedlock child. ETPL 4-1.2 (subd [a], par [2], cl [C]) provides that
“[a] child born out of wedlock is the legitimate child of his father so that he and his issue inherit from his father and his paternal kindred if * * *
“paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own.”
This subdivision specifically excludes the requirement that an order of filiation declaring paternity be made during the lifetime of the father. Again, it must also be noted that there is no requirement in the Family Court Act, particularly section 517 relating to the Statute of Limitations in paternity proceedings, that a paternity proceeding be instituted within the lifetime of the father.
In Matter of Gordon v Cole (54 Misc 2d 967), the Family Court entered an order of filiation against a deceased alleged putative father upon a petition filed for the purpose of changing the name of the child to that of his alleged putative father. The petition was joined in by all of the members of the deceased’s family. The court found implied legislative recognition of the power of the Family Court to grant an order of filiation after the death of the putative father by the amendment of section 513 of the Family Court Act to permit support proceedings to be brought after the death of a father only if a court support order or judicially approved settlement had been made prior to the father’s death. The court noted that this amendment was made in response to a 1952 Surrogate’s Court decision which enforced an out-of-court acknowledgment of paternity and a support agreement against the estate of a deceased father. (Matter of Cirillo, 114 NYS 2d 799.) The implied legislative approval found in amended section 513 of the Family Court Act is that in order to maintain a *326 support proceeding after the death of the father, only the support aspect requires a court order and not the paternity acknowledgment.
In Matter of Burns v Miller Constr. (55 NY2d 501), the Court of Appeals impliedly recognized that such a right exists after the death of the father. In that case the child was born eight and one-half months after the death of the putative father. The child, through his unmarried mother, filed a claim for death benefits under the Workers’ Compensation Law. At the hearing, the mother testified that the first and only time she mentioned her pregnancy to the putative father was on the day of his death. The Workers’ Compensation Board found that the putative father did not acknowledge the child as his own and therefore did not make any findings as to the questions of paternity and dependency. The Appellate Division affirmed the dismissal of the claim. The Court of Appeals reversed and held that when a claim is .filed for death benefits under the Workers’ Compensation Law by or on behalf of a child born out of wedlock to a deceased worker, proof of acknowledgment is not required. The case is remitted and remanded to the Workers’ Compensation Board to address the issues of paternity and dependency.
Where the Court of Appeals has affirmed that the right to establish paternity and dependency exists after the death of an alleged father, the child and mother should not be required to establish such paternity before each and every administrative agency from whom the child might be entitled to benefits. The Legislature has established a judicial forum, the Family Court, for the determination of these questions in a manner and form which would have finality.
Although the Legislature failed to address the issue of whether a paternity action survives after the death of the putative father when they amended section 518 of the Family Court Act, the Family Court of Westchester County, in Matter of Jospeh A. v Gina L. (126 Misc 2d 63) found that such a right exists under the statute. The court stopped short of declaring section 518 unconstitutional on an equal protection basis for establishing a classification which is discriminated against on the basis of sex. Instead, the court chose to read the statute as gender neutral, thereby allowing paternity proceedings to be instituted after the death of either the mother or the putative father.
The facts before the court in Matter of Joseph A. v Gina L. (supra) were somewhat different from the facts at bar in that prior to his death, the putative father had filed a paternity *327 petition which contained the sworn allegations that he was the father of the child and that he had acknowledged paternity by furnishing support. The putative father died some 10 weeks after filing the petition which prompted the filing of separate paternity petitions by the mother and the Law Guardian. Although in the case before this court both the birth of the child and the filing of the paternity petition occurred after the death of the putative father, the court finds that these factors would be relevant to questions of proof in establishing paternity at trial and generally irrelevant to the issue of whether a paternity proceeding is properly maintainable in the first instance. The issue at this time is not whether petitioner can prove paternity, but whether she should be given her day in court. The court is mindful of the difficult problems of proof which are created by the death of the father and the increased potential for the bringing of fraudulent claims. However, the court cannot assume that it will be impossible for the petitioner to establish paternity by clear and convincing evidence by not giving her the opportunity. With the scientific advances in blood testing, there is authority that an HLA test can be performed on a dead man. (See, e.g., Hansen & Gurtler, H.L.A.-Typing of a Dead Man by a Microabsorption Method: Solution of a Paternity Case, 13 Tissue Antigens 61 [man dead six days, excluded by HLA testing]). Even the Dead Man’s Statute (CPLR 4519) would not necessarily preclude the successful prosecution of a paternity petition. (Matter of James J. v Valerie M., 98 Misc 2d, at p 788.) Testimony concerning the deceased putative father would be admissible where there is no pecuniary interest or property involved in establishing paternity. (See People ex rel. Blake v Charger, 76 Misc 2d 577.)
In light of the recent developments as set forth above, the court finds sufficient authority to permit the filing of the instant paternity petition. However, the question now becomes whether the court may proceed to adjudge paternity absent the appointment of an administrator to represent the decedent. In Matter of James J. v Valerie M. (supra), the court had before it this very question except that the deceased was the mother of the child and the petitioner was the putative father. The court found that where the estate is negligible or nonexistent, the appointment of an administrator is not required as long as the proceeding is adversarial. It was noted that the Surrogate often proceeds without appointing a fiduciary to represent the estate of a deceased legator under a will or a deceased distributee in an intestate estate where all the parties are before the court. (98 Misc 2d, at p 788.) The requirement that the proceeding be *328 adversarial can be met, according to section 518 of the Family-Court Act, by permitting an authorized person to conduct the defense of the proceeding. An authorized person, as defined in section 522 of the Family Court Act, can be the next of kin of the child. Although paternity has yet to be established, the most appropriate representative to conduct the defense would be the parent or parents of the deceased putative father particularly since certain rights, benefits and obligations would be conferred upon them by the entry of an order of filiation. In addition, a Law Guardian should be appointed to represent the interests of the child. By having the mother of the child, the parent or parents of the deceased putative father and a Law Guardian, the requirement that the proceeding be adversarial and that both parents be before the court (Family Ct Act, § 564) would be satisfied. With all the necessary parties present, the court will be able to conduct a hearing on the merits of the paternity petition.
Accordingly, petitioner is directed to obtain a new summons and petition naming the parents of the deceased putative father as respondents and to effect personal service upon them. When all parties are before the court, a Law Guardian shall be appointed to represent the interests' of the child.