OPINION OF THE COURT
Jerome S. Medowar, J.
In this paternity proceeding, the court is faced with a fascinating issue of statutory construction of apparent first impression. At issue is whether results of a blood genetic *1007 marker test administered to a putative father prior to his death in a paternity proceeding relating to a prior child of the same parties sufficiently supports petitioner’s standing under Family Court Act § 519 (c) to commence a new paternity proceeding involving another child of the same parties. Consistent with principles of statutory construction and in furtherance of the child’s welfare and public policy, this court answers the question in the affirmative.
On June 24, 1991, assignor Jennifer A. Queisser (Mother) gave birth out of wedlock to a baby boy named Walter S. Queisser in East Meadow, Nassau County, New York. Shortly after the birth, she and the child began receiving public financial assistance from the Nassau County Department of Social Services. Petitioner herein, Commissioner of Social Services, subsequently instituted a paternity proceeding on behalf of Mother against respondent Souheil Abizeid to declare him Walter’s father and to obtain indemnification for child support payments. Mother alleged in the petition that she had had sexual intercourse with respondent on several occasions from 1983 to 1991, during the time including the critical period of conception. Petitioner was looking for child support apparently based on the fact that respondent was the owner of a gas station in Massapequa, New York.
On the appearance date, January 29, 1992, Hearing Examiner Patricia Bannon ordered the parties to submit to blood genetic marker tests to determine whether respondent could be excluded as being Walter’s father. Following the administering and analysis of the blood genetic marker tests in the form of Human Leukocyte Antigen (HLA) tests or blood grouping tests, respondent could not be excluded as Walter’s father due to a 99.83% probability of paternity as compared to an untested random man of similar ethnic background. Based on those results and respondent’s voluntarily and intelligently made admission of paternity, an order of filiation was entered on May 21, 1992 by Hearing Examiner Bannon, declaring respondent as Walter’s father and ordering him to temporarily pay a monthly amount of $25 towards child support. The temporary order of support was made final on June 17, 1992. Respondent apparently complied with that support order for several years, while continuing to have a relationship with Mother.
On October 10, 1994, Mother again gave birth out of wedlock to another baby boy, Richard S. Queisser, the subject child of this proceeding. Following the birth, respondent’s health deteriorated until he was finally diagnosed with cancer. Ten *1008 months after the onset of that illness, on September 5, 1995, respondent died in West Islip, New York, at the age of 49 survived by his wife, movant Afaf Abizeid, and other children.
Notwithstanding respondent’s death, and based upon Mother’s status as a recipient of public assistance, petitioner Commissioner commenced the instant proceeding by filing a paternity petition, as assignee and on behalf of Mother, against respondent decedent seeking a posthumous declaration of paternity and an award of child support pursuant to Family Court Act § 519. In support thereof, Mother affirmed that from 1983 until December 1994 she had had exclusive sexual intercourse with respondent and, as a result, she became pregnant with Richard. On the appearance day, Nassau County Family Court appointed counsel to represent Mother, as an indigent pursuant to County Law article 18-B, and a Law Guardian to protect Richard’s interests.
In opposition to the paternity petition, Ms. Abizeid, through her privately retained counsel, moves to dismiss the petition, presumably pursuant to CPLR 3211 (10), relying on Family Court Act § 519; CPLR 1001 and 1015. In responding papers, Mother cross-moves for an order: (1) amending the petition’s caption to include Ms. Abizeid as a respondent; (2) directing blood genetic tests of Mother and the child; (3) directing that the blood genetic marker tests results previously performed on respondent be made available for this proceeding; and (4) directing a pretrial standing hearing pursuant to Family Court Act § 519 (d) based on several allegations by Mother that respondent openly and notoriously acknowledged his paternity of Richard.
Following his receipt of Ms. Abizeid’s motion, petitioner also cross-moves for an order: (1) denying Ms. Abizeid’s motion to dismiss; (2) amending the papers to include Ms. Abizeid as a respondent in this proceeding; (3) directing that the results of respondent’s prior tests be made available to this proceeding and the Deputy County Attorney; and (4) directing blood genetic marker tests of Mother and Richard. Ms. Abizeid’s motion and the other parties’ cross motions are consolidated for purposes of this decision and order.
At common law, abatement, the complete extinguishment of a cause of action, was triggered by the death of a party in whose favor or against whom the cause of action existed (see generally, 1 NY Jur 2d, Actions, § 74). Under modern practice, however, statutory provisions and case law generally prevent the complete abatement of most causes of action (see, Siegel, *1009 NY Frac § 185, at 279; 1 NY Jur 2d, Actions, §§ 90-93). In point is the statute at issue in this proceeding, Family Court Act § 519, which grants standing to a petitioner to commence a postdeath paternity proceeding as follows:
"If, at any time before or after a petition is filed, the putative father dies * * * neither the proceeding nor the right to commence the proceeding shall necessarily abate but may be commenced or continued by any of the persons authorized by this article to commence a paternity proceeding where:
"(a) the putative father was the petitioner in the paternity proceeding; or,
"(b) the putative father acknowledged paternity of the child in open court; or,
"(c) a blood genetic marker test had been administered to the putative father prior to his death; or,
"(d) the putative father has openly and notoriously acknowledged the child as his own.”
A paucity of precedent exists interpreting this statute (see, e.g., Matter of Anne R. v Estate of Francis C., 167 Misc 2d 343; Matter of Janis, 157 Misc 2d 999, affd 210 AD2d 101; Matter of Commissioner of Social Servs. v William C., 147 Misc 2d 974).
Paternity statutes, such as Family Court Act § 519, are to be given a liberal construction in order to protect the welfare of the child by not unduly suspending the question of parentage (see, Schaschlo v Taishoff, 2 NY2d 408; see also, Matter of Sondra S. v Jay O., 126 Misc 2d 322, 323; Matter of Kordek v Wood, 90 AD2d 209, 210). And, when faced with statutory language which appears unambiguous, as here, a court must construe the language according to its natural and most obvious meaning while taking into consideration "the mischief sought to be remedied by the new legislation, and * * * construing] the act in question so as to suppress the evil and advance the remedy” (McKinney’s Cons Laws of NY, Book 1, Statutes § 95; §§ 94, 96). In fact, since Family Court possesses exclusive constitutional and statutory jurisdiction to determine paternity and establish the support of children born out of wedlock (NY Const, art VI, § 13; Family Ct Act § 115 [a] [iii]; § 511), its statutory interpretations in this area ought to be accorded weight and respect due to the court’s expertise.
Applying the foregoing principles to the instant petition, petitioner has standing to proceed with the paternity proceeding against respondent pursuant to Family Court Act § 519. Preliminarily, Ms. Abizeid argues in her CPLR 3211 motion to *1010 dismiss that the petition was improperly instituted against a dead person, respondent, who is a necessary party to the proceeding pursuant to CPLR 1001 (a), which requires that all persons "who might be inequitably affected by a judgment in the action shall be made” parties to the action. Ms. Abizeid also relies on CPLR 1015 (a), which provides that "[i]f a party dies and the claim for or against him is not thereby extinguished[,] the court shall order substitution of the proper parties.”
Ms. Abizeid’s reliance on CPLR provisions to support a dismissal of the paternity petition is misplaced, however. CPLR provisions only apply to Family Court proceedings when the applicable method of procedure is not prescribed by the Family Court Act (Family Ct Act § 165 [a]). Contrary to Ms. Abizeid’s arguments, Family Court Act § 519 specifically permits the commencement of a paternity proceeding against a deceased putative father. The instant proceeding commenced against respondent is therefore valid notwithstanding his prior death. Moreover, although the petition’s caption does not include Ms. Abizeid, she and respondent’s estate are addressed and mentioned in the body of the petition. Accordingly, the cross motion by petitioner and Mother to amend the caption to include Ms. Abizeid as respondent is granted since no letters of administration have been issued and she would be in the best position to contest petitioner’s application (see, Matter of Anne R. v Estate of Francis C., supra, at 344-346). In fact, Ms. Abizeid has already hired counsel and is contesting the petition.
Ms. Abizeid next contends that the paternity petition must be dismissed because none of the four subdivisions of Family Court Act § 519, preventing abatement, exists or is supported by relevant evidence. She alternatively argues that even if the blood genetic marker test results were in fact administered in the past to respondent, there are questions as to their validity, foundation and authenticity given the passage of time. These contentions by Ms. Abizeid are unpersuasive to the court.
As the above-quoted statutory language reflects, Family Court Act § 519 (c) grants standing to a petitioner to commence a paternity proceeding when "a blood genetic marker test had been administered to the putative father prior to his death.” This statutory language appears unambiguous and should be construed according to its natural and obvious sense while suppressing the evil and promoting the remedy sought to be advanced (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94-96). Bearing in mind these principles of statutory *1011 construction, it is clear that the blood, genetic marker tests administered to respondent during the prior paternity proceeding sufficiently support petitioner’s standing to commence this proceeding pursuant to Family Court Act § 519 (c).
Although the statutory language used by the Legislature in section 519, subdivisions (a) and (b) appear to refer to the particular proceeding at issue, subdivisions (c) and (d) do not necessarily relate to it but concern previous acts taken by and/or on behalf of the putative father. By the same reasoning, when the statutory language in subdivision (c) speaks of "a blood genetic marker test” that had been administered to the putative father, the test does not necessarily relate or belong to the proceeding at hand. This court believes that the relevant test for statutory purposes may be one performed prior to the proceeding at issue and/or involving another child. Such is the situation involved in the instant paternity proceeding.
As evinced by court records, in 1992, respondent, Mother and their child Walter submitted to blood genetic marker tests, in the form of HLA tests, in support of the prior paternity petition. Those blood grouping test results are presently in the custody of and readily available to this court and counsel as part of the record in the previous proceeding, index No. P 91-1738. Since the relevant elements and characteristics of respondent’s blood grouping tests do not change over time, they might be utilized, with a proper foundation, as material and relevant evidence in this proceeding to determine whether respondent can be excluded as the biological father of Richard. These results are not conclusive but rather probative evidence that must be considered together with other evidence of paternity (see, Matter of Jane PP. v Paul QQ., 65 NY2d 994, 996; Family Ct Act § 532 [a]; CPLR 4518 [d]). By utilizing these test results there would be no need for an exhumation or any other disturbance of respondent’s mortal remains.
Further support for this statutory interpretation, which grants standing based on the prior test results, is found in its suppression of the evils sought to the remedied by Family Court Act § 519 and its advancement of the suggested remedy. The evils sought to be remedied by the statute are the unanswered question of parentage as well as the unprotected right to support of children born out of wedlock who survive the death of their putative father (see, Matter of Sondra S. v Jay O., supra, at 323). The statutory framework additionally seeks "to provide a procedure for the government to obtain indemnification for the expense of supporting the child” (Mat *1012 ter of Kordek v Wood, supra, at 210). The statutory construction herein promotes these goals by expediting a declaration of paternity and, consequently, promptly creating the children’s right to support by the father. The rights and interests of these children is therefore afforded primacy by the court consistent with precedent and the statutory framework (see, e.g., Matter of Kordek v Wood, supra, at 210, 213; Family Ct Act §§ 513 [parents liable for child support], 515 [government responsible for child’s education and support if parent unable], 522 [several persons or agencies can commence proceeding]).
Faced with the existence of the prior blood genetic marker test results, Ms. Abizeid additionally argues that the validity and authenticity of the results are suspect because of the time period that has elapsed between their administration and the present. Although the test results were in fact performed almost three years ago, this court is unpersuaded by Ms. Abizeid’s unsupported claim as to their lack of validity and staleness.
Contrary to Ms. Abizeid’s intimations as to the reliability and validity of blood genetic marker tests, which include blood grouping tests, HLA tests and deoxyribonucleic acid (DNA) tests (see, Matter of Gregory F. W. v Lori Anne B., 162 Misc 2d 411, 413, n 1), case law has consistently approved and supported the reliability and accuracy of those tests to determine the probability of nonpaternity (see, Matter of Richard W. v Roberta Y., 212 AD2d 89 [3d Dept]; Matter of Commissioner of Social Servs. [Celia D.[ v Hector S., 216 AD2d 81 [1st Dept]; Matter of Beaudoin v Robert A., 199 AD2d 842, 844 [3d Dept]; Matter of Department of Social Servs. [Sondra C.] v Thomas J. S., 100 AD2d 119 [2d Dept]). The accuracy of the tests is also widely accepted in the scientific and medical communities (see, Matter of Goodrich v Norman, 100 Misc 2d 33, 37). Additional support for the tests’ accuracy is found in the Legislature’s amendment to Family Court Act § 532 to provide that genetic marker test results indicating at least a 95% probability of paternity are not only admissible, but create a rebuttable presumption of paternity (Family Ct Act § 532).
Particularly to this proceeding, the blood genetic marker tests of respondent were performed by a reputable North Carolina corporation, Genetic Design, Inc., accredited by the New York State Commissioner of Health and the Parentage Testing Committee of the American Association of Blood Banks. The corporation, which routinely provides testing services for this court, submitted the test results accompanied by a sworn, *1013 notarized affirmation by its director, Dr. R. Scott Foster, attesting to their validity and correctness. Furthermore, the results were also accompanied by a certification pursuant to CPLR 4518 (c) by Dr. Foster, certifying and authenticating the records and reports relating to the administering and analysis of the blood tests pursuant to Family Court Act §§ 418 and 532. Dr. Foster affirmed in the certification that the report was made in the regular course of business of the laboratory and immediately or within a reasonable time after the tests were administered. In any event, respondent never objected to the validity or accuracy of the test results or to the subsequently entered order of filiation and support.
Moreover, Ms. Abizeid’s contention that the test results are stale is unavailing. Ms. Abizeid has failed to provide any evidence, proof or precedent, legal or otherwise, to support her allegations. Without evidence to the contrary, this court is of the opinion that blood test results do not change over time. They appear akin to DNA tests which provide fingerprint-like characteristics and elements of an individual’s blood. As such, they can be used in conjunction with other evidence to establish respondent as Richard’s father at the hearing stage of the paternity proceeding.
Accordingly, based on the foregoing discussion, Ms. Abizeid’s motion to dismiss the paternity petition is denied in its entirety. Mother’s cross motion to: (1) amend the caption, summons, petition and all related papers to include Ms. Abizeid as a respondent is granted; (2) direct blood genetic marker tests of Mother and the child Richard is granted; (3) direct that the blood genetic marker test results previously performed on respondent be made available to this proceeding is granted; and (4) direct a standing hearing under Family Court Act § 519 (d) is denied. Finally, petitioner’s cross motion asking for similar items of relief than Mother is granted in its entirety.